823
25....387

FREDERICK SHOEFFLER, Plaintiff in Error.

*vs.*

THE STATE OF WISCONSIN, Defendant in Error.

ERROR TO THE OUTAGAMIE CIRCUIT COURT.

In criminal cases, challenges to the polls are—1st. For principal cause: 2d. For favor: and 3d. Peremptory. Challenge for cause is a matter of law, (the facts being ascertained,) to be determined by the court; challenge for favor is a question of fact.

Principal cause of challenge to a juror, is, such a state of facts from which the law presumes such a bias, prejudice, or incompetency, as absolutely to disqual- ify the person to act as an impartial juror in the particular case, and the court has no discretion in the premises.

The facts alleged for principal cause, ought to be definitely stated, so that they may be demurred to, leaving only a question of law to be pronounced upon, the facts being admitted.

Challenge to the favor involves a question of fact, to be determined by triers. It involves facts which do not necessarily of themselves disqualify the juror, but may do so, according to the state or condition of mind produced by them.

An opinion formed, or a bias entertained upon merely hypothetical grounds, such as: if what the juror has heard or read be true; if he is personally, inimical, &c. All such, are cause of challenge to the favor, wherein the law pronounces no absolute judgment, but leaves the question to be determined by triers: which question is: does the juror stand indifferent between the parties?

If the facts which form the ground of challenge for principal cause be disputed, the issue is tried by the court.

The truth of the facts alleged as ground of challenge to the favor, as well as their effect upon the mind of the juror, is to be determined by triers.

In case triers are not demanded by the parties, or ordered by the court, a chal- lenge to the favor, may be determined by the court.

The reading of the circumstances attending the commission of a crime, and the connection of the prisoner therewith, or having heard the story related by others, and the impressions produced thereby, are not grounds of challenge for principal cause, but are very proper to be considered on a challenge to the favor, and may of themselves be sufficient to justify or require the triers to sustain such challenge.

Whatever facts or circumstances in evidence may induce the triers to believe that the juror does not stand indifferent between the parties, are sufficient to

sustain a challenge to the favor; for the question for the triers to determine is: Does the juror stand indifferent between the parties?

A fixed, settled opinion as to the guilt or innocence of the prisoner, is ground of challenge for principal cause.

When a juror is challenged, the ground should be stated distinctly, so that the court may determine the character, and the manner of disposing of it.

On the trial of a capital offence, each defendant, how many soever may be included in the indictment, is entitled to twenty-four peremptory challenges; and the prosecution to but six, whether there be one defendant or many. Whiton, *dissenting*.

The general rule is, that what a party says in relation to the offence is admissible in evidence against him, whether on oath, or not; but to this rule there are some exceptions; one of which is, those declarations made by a party on oath, and charged with the offence.

Though the declarations of the defendant may have been made when he was strongly suspected of committing the crime, and the circumstances surrounding him, indicate palpably the existence of such suspicion; yet if he be not charged with the offence, and the declarations be made on oath, they are evidence against him.

No person is compelled to give evidence against himself; and if a person should be compelled to answer a question before a coroner, jury, or elsewhere, to which he had objected on the ground that it might tend to criminate him, such answer is incompetent, and cannot be used against him.

Confessions or statements extorted from a person by duress, or made under circumstances which are equivalent to arrest or duress, or any other circumstances which show that they are not voluntary, are inadmissible.

The husband is an incompetent witness for the co-defendant of the wife, where both of the latter are on trial together. If the testimony of the husband be essential to the defence of the co-defendant, he must apply for a trial separate from the wife.

This court will not entertain an assignment of error based on the overruling a motion for a new trial, founded upon the *weight of evidence*, unless in an extreme case, indicating an abuse of discretion in the court below.

This case was elaborately argued, and the case fully stated, but all the points discussed and decided are set forth in the opinion of the court, as well as the facts on which they were predicated. It is not necessary to give more, unless the briefs and arguments of the counsel on the respective sides should also be reported; but as the space prescribed will not admit of this, the syllabus and opinion are alone reported.

*Howe & Haynes*, for the plaintiff in error.

*G. B. Smith*, Att'y General, for defendant in error.

*By the Court*, Smith, J. The plaintiff in error, together with Christiana Schoeffler, was indicted at the April term, 1854, of the Outagamie Circuit Court, for the murder of his wife, Frederika Schoeffler, and was tried at a special term of said court, held pursuant to the statute, in May following. The trial resulted in a verdict of guilty as to both defendants. A new trial was moved in behalf of the prisoners, which was granted as to Christiana, and denied as to the present plaintiff in error. Various exceptions were taken in the course of the trial, which are now brought here for adjudication, and which we will examine in their order.

Ezra Le Clair, one of the jurors of the panel being called, and duly sworn to answer all such questions as should be put to him touching his qualifications as juror in said cause, testified: That he had formed and expressed no opinion as to the guilt or innocence of the defendants. Thereupon the counsel for the prisoners asked the juror, whether he had read any published accounts of this case? To this question the counsel for the State objected, and the objection was sustained by the court, and exception duly taken. The counsel for the defendants then proposed to ask the juror, whether he had had any conversation with the witnesses for the government concerning this case? which was likewise objected to, the objection sustained, and exception taken. The juror further stated that he was sensible of no bias or prejudice.

August Briggs, another of the regular panel, was called, who, being sworn, in like manner, testified: that he had heard the story told over and talked

about, but was not present at the examination before the coroner; had not read the report of it; had not heard the story from witnesses, or those who had heard the testimony; but had an opinion upon the question of guilt or innocence, if what he had heard was true; the opinion would not prevent his hearing the testimony impartially. Therefore the counsel for the prisoners challenged the said juror "*for cause*," and insisted that he should be set aside by the court; to which the counsel for the State objected, and the court decided the juror to be competent; to which the defendant excepted. The juror was then peremptorily challenged by the prisoners.

William F. Morley, another of the panel, was then called, and in like manner sworn, who testified: that he had formed an opinion concerning the guilt or innocence of the defendants; formed by talking with the neighbors; had read nothing about the case. "The opinion would not influence my verdict, nor prevent me from listening to the testimony impartially. I have an opinion as to whether the stories I heard were correct or not." Thereupon the counsel for the prisoners challenged the said juror "for cause," which was overruled by the court, and the juror was declared competent; to which ruling the counsel for the prisoners excepted.

From the bill of exceptions, a portion of which is given above, it appears that four persons of the regular panel were called as jurors, viz: Le Clair, Beach, Briggs and Morley, who were severally sworn and examined as to their qualifications as jurors. It further appears that several exceptions were taken to the ruling of the judge upon the questions put to the first juror, and repeated to the others; and also to

the rulings of the judge in regard to the competency
of the other jurors. It also appears from the bill of
exceptions, that Beach was peremptorily challenged
by the prisoners. But the bill does not disclose the
final action upon Le Clair and Morley. Upon exam-
ining the record at large, however, neither of their
names appear among the list of jurors empannelled
to try the issue.

The first question presented for our consideration
is, whether the questions put to Le Clair were com-
petent, and ought to have been allowed.

The chief difficulty in the determination of this
question, arises from a want of a proper discrimina-
tion in regard to the challenge made by the defend-
ants. We are not apprized as to what led to the
swearing of these several jurors, to make true an-
swers touching their qualifications as jurors, &c. The
challenge was to the polls and not to the array.

Challenges to the polls are: 1st. For principal
cause. 2d. For favor. 3d. Peremptory.

It is not necessary to do more than point out some
of the distinctions between a challenge for principal
cause, and a challenge for favor, and the manner of
making and trying the same, in order to ascertain the
character of the challenges interposed in this case.

It is believed that the distinction between chal-
lenge for principal cause, and a challenge for favor is,
that the former is a question of law, and the latter a
question of fact. In the former case, the facts being
ascertained, the law presumes such a bias or prejudice
as absolutely to disqualify the person to act as a juror
in the particular case. The court has only to pro-
nounce the law upon the ascertained facts. It is the
judgment of the law declared through the court, or

judge, who has no discretion in the premises. As when the juror has formed and expressed a fixed and decided opinion in regard to the guilt or innocence of the accused; when he is near of kin to the prisoner, or if he be infamous, or an alien, *non compos mentis*, &c., and in many other instances the law raises such a presumption of bias, as absolutely to exclude the juror, leaving nothing to be determined by the court except merely the truth of the facts alleged. Hence it is said that challenges for principal cause, are in all cases to be tried by the court, while those to the favor are to be determined by triers. The former should always be so made as to form a part of the record. The facts constituting the principal cause ought to be definitely stated, so that they may be demurred to, leaving the judgment of the law only to be pronounced, upon the facts thus admitted. The latter involve an issue of fact, which is to be found by triers duly appointed, or by the court, triers being waived, and the issue submitted. The former, the subjects of challenge for principal cause, are absolutely disqualified; the court has no discretion in the matter, and no duty to perform, but barely to ascertain the facts, if disputed, when the law furnishes the conclusion. Thus, the fact being ascertained that the juror is a brother of the prisoner, the law deems him incompetent, and he must be set aside for principal cause. So, if he have formed and expressed an opinion founded on facts established, and not merely hypothetical.

But where an opinion has been formed, or a bias entertained upon merely hypothetical grounds; as, if what he has heard be true; if he is the kind of man he has heard represented; if he is personally inimi-

cal ; if he have suits pending with the party, &c., &c.

All such causes of challenge are to the favor, and not of principal cause. The legal inquiry is, does the juror stand indifferent between the parties? And here the law pronounces no absolute judgment, but leaves the fact to be tried and determined by the judgment and consciences of triers. When a challenge for principal cause is interposed, the grounds of challenge are stated, or more properly reduced to writing, and the opposite party may demur, when it becomes a part of the record. The facts being admitted by the demurrer, the issue is to the court only Or, if the facts alleged as ground of challenge for principal cause are disputed, the issue is tried by the court, and according to the finding, is the judgment of the law.

Not so, however, when the challenge is to the favor. Here the question is, " does the juror stand indifferent between the parties to the suit ?" A wide field of inquiry is opened, and the issue is submitted to triers. The inquiry is, in regard to the state of mind of the proposed juror. He has not formed that fixed and settled opinion from known facts, which, in the judgment of the law absolutely disqualifies him. But he may have formed an hypothetical opinion, upon mere rumor, which may, or may not be true, and according as the rumor may turn out to be true or false, will such opinion be modified. *See* 3 *Black. Com.* 317 ; *People vs. Bodine*, 1 *Denio*, 304 ; *People vs. Freeman*, 4 *Denio* 9.

In this case the nature of the challenge to the jurors is not stated. The persons called were first sworn and examined, and after such examination were " challenged for cause." From the answer given

to the questions put to the jurors, it is apparent that the challenge could only be made for favor. No one appears to have formed such an opinion as would justify a challenge for principal cause. The usual mode of disposing of challenges for favor, is by triers, though doubtless the judge may hear and determine the matter in case triers are not demanded. Regarding, therefore, the challenges in this case as to the favor, and the judge acting in the place of triers, we must consider his determination precisely as we would that of triers duly appointed, and hence conclusive. We cannot say that the answers of the persons challenged, were such as to absolutely disqualify them, though they would very properly be considered on the question of indifference or favor.

The absence or want of challenge in the proper form and at the proper time, renders the question of the propriety of the questions propounded to Le-Clair, more difficult of solution. When a challenge is to the favor, the juror may be interrogated in order to show the real state of his mind towards the parties, and in reference to the issue to be tried. If he has read reports, or listened to stories of the matters which form the subject of the issue, so as to produce upon his mind a bias or prejudice, it is certainly proper to give such facts and circumstances in evidence, and the juror himself may be examined in regard to them. But here was no challenge to the favor. At the time the questions were put to him, he had not been challenged at all ; nor does it appear that he was at any time challenged, by either party. The record does not inform us what disposition was made of the juror, except that his name does not appear among those who were finally empannelled and tried the cause.

JUNE TERM
1854.

Schoeffler
vs.
The State.

The defendants could, therefore, have sustained no possible injury from the ruling of the judge, as Le-Clair did not sit upon the jury, nor does it appear that any peremptory challenge was exhausted upon him. The juror Beach was peremptorily challenged by the State, and it is unnecessary to notice the exceptions taken upon his examination, Augustus Briggs was also sworn and examined, and was finally peremptorily challenged by the defendants. But no grounds for principal cause are disclosed. The defendants did not challenge him for favor; ask to have the question of his un-indifference determined by triers, or the court, but demanded that he should be set aside, as absolutely disqualified. The judge refused to set him aside, and we think rightly. We may, perhaps regard such demand as a challenge for principal cause, and thus regarding it, we think the court properly overruled it. But it was perfectly competent for the defendants then to interpose a challenge to the favor, and have the same tried; but failing to do so, we do not see any error of the judge in declaring the juror competent.

The next juror is Morley, who whs sworn and examined, and upon such examination, stated that " he had formed an opinion concerning the guilt or innocence of the defendants; formed by talking with the neighbors. Had read nothing of the case; that the opinion would not influence his verdict, nor prevent him from listening to the testimony impartially; that he had an opinion whether the stories he had heard were correct or not." Thereupon the counsel for the defendants challenged the said juror for cause, and insisted that he be set aside by the court. The challenge was overruled and the counsel for the defend-

JUNE TERM 1854.

Schoeffler
vs.
The State.

ants excepted. We are disposed to regard this as a challenge for principal cause, and the question is, whether the answers of the juror disclose such a state of mind as, in the judgment of the law, to exclude him. It is the object of the law to secure to every party a fair trial by an impartial jury. A juror who has already a fixed, settled opinion upon the issue to be tried, cannot be called an impartial juror, and the law declares him incompetent for that reason. But it is not every impression made upon the mind by reading or hearing of the circumstances of the case, that can be called an opinion, such as the law contemplates. It may be, and undoubtedly is, difficult to ascertain and appreciate the degree or strength of such impressions. The judgment of the juror as to the effect which they might have upon his verdict, or their influence upon his mind in weighing the evidence, must in most cases, be very unsatisfactory. The juror, from his habits of thought and feeling, want of mental discipline, and many other causes, may be the least qualified to judge of the effect of preconceived notions upon his own mind. Hence, all such declarations, as, that his opinion would not influence his verdict, or prevent his properly weigh-ing the evidence, &c., are of little moment, except that they may tend to delude the triers, and the parties, as well as the juror himself. Here the juror stated that he had formed an opinion as to the guilt or innocence of the defendants, derived from stories heard from his neighbors, and had also an opinion as to the correctness of these stories; and we have only his word that such opinions would have no influence upon his verdict. Do these answers disclose a " cause which carries with it, *prima facie*, evident marks of

suspicion, either of malice or favor?" 3 *Blk. Com.*
363.  Judge Gaston, in the case of *The State vs. Benton*, 2 *Dev. & B.*, 214, says : " It seemeth to us that
an opinion fully made up and expressed against either
of the parties, on the subject matter of the cause to
be tried, whether in civil or criminal cases, is a good
cause of *principal* challenge ; but that an opinion
imperfectly formed, or an opinion merely hypothetical, that is to say, founded upon the supposition that
facts are as they have been represented or assumed
to be, do not constitute a cause of principal challenge,
although they may be urged by way of challenge *to
the favor*, which is to be allowed or disallowed, as
the triers may find the fact of favor or indifferency."

In the case of the *People vs. Bodine*, 1 *Denio*, 308,
the court says, "A fixed and absolute opinion may be
necessary to sustain a challenge for *principal cause*,
but not so where the challenge is *for favor*.  In the
first species of challenge the result is a conclusion of
*law* upon ascertained facts, but in the latter the conclusion is a matter of *fact* to be found by the triers.

Again, in the case of the *People vs. Freeman*, 4
*Denio*, 32, the court quotes from *Mann vs. Glover*, 2
*Green*, 195.  " A party cannot make a principal challenge, or challenge to the favor, by giving it a name.
A challenge, whether in writing or by parol, must be
in such terms that the court can see in the first place
whether it is for principal cause or to the favor, and
so determine in what form it is to be tried ; and secondly, whether the facts, if true, are sufficient to
support such challenge." And the court further
remarks : "When a juror is challenged for principal
cause, or for favor, the ground of the challenge should
be distinctly stated, for without this the challenge is

54

June Term 1854.

Schoeffler vs. The State.

incomplete, and may be wholly disregarded by the court. It is not enough to say, I challenge for principle cause, or for favor, and stop there ; the cause of the challenge must be specified." In the same case, the challenge was for principal cause, and it appeared that the ground of the challenge was, that the juror had formed and expressed an opinion that the prisoner was guilty of the crime for which he stood indicted. And the court say : "This was good cause of principal challenge, as has repeatedly been held by this court." Again, in relation to this same matter say : " He (the juror) had only an impression that the prisoner was guilty, but nothing which deserved to be called an absolute opinion. He had doubts of the prisoner's guilt, and as far as any opinion had been formed, it was contingent and hypothetical. Such impressions or opinion fall short of what is required to maintain a challenge for principal cause." *People vs. Freeman,* 4 *Denio,* 34, and authorities there cited.

It seems to us, that it is very difficult, from the opinions expressed, to determine upon that degree, or depth, or strength of impression or opinion which shall become matter of principal challenge, or to the favor. The practical line is almost imperceptible, though theoretically it may be distinct enough. It is not, however, necessary to pursue the subject, as it does not appear that the defendants were driven to a peremptory challenge, and we are uninformed of the manner in which the juror was disposed of, save from the fact that in the list of jurors who actually tried the issue, his name does not appear, and hence the defendants could have suffered no injury ; and this subject has been here alluded to, only in the hope of inducing correct practice in the empannelling of

juries, and in the regularity of exceptions taken to the ruling of the court below. The cases herein referred to, and the authorities there cited, will serve as a guide in future, and render our practice uniform and perfect.

But as Morley did not serve upon the jury, as it does not appear that any peremptory challenges were exhausted upon him, and as he was not challenged to the favor, and especially as the defendants could not have been injured by the error, if any there was, we cannot say that a new trial ought to be granted for this cause, though we are free to admit that where a juror truly says that he has formed an opinion upon the matter in issue, it were better that he should not sit upon the jury. The attempt to weigh out thoughts and measure impressions, so as to determine whether an opinion is fixed and decided, or whether it be contingent or hypothetical, can scarcely promise satisfactory results. All our opinions which are not based upon facts within our own personal knowledge, must be necessarily hypothetical, in the sense in which that phrase is used. If the facts be true, the conclusion follows. Indeed, most of our opinions, or what make up the sum of our knowledge, are based upon the faith which we place in those who relate to us the facts upon which they rest. The details of natural science, history, biography, &c., rest upon the same foundation. If the facts related are true, our opinions are so and so. If they are untrue, they are thus and thus. But they are opinions, nevertheless, fixed and permanent in proportion to the degree of credence which we give to the facts and circumstances related, and it would seem that any effort to ascertain the precise character or degree of opinion, so as to enable

the court to determine whether it be cause of principal challenge, or to the favor, must necessarily be found extremely difficult. However, learned judges and courts have sought to make distinctions of this kind, and have acted upon it, and until occasion shall imperatively require us to disregard such distinction, and to regard all cases where the juror says he has formed an opinion upon the subject matter of the issue to be tried, (however he may attempt to explain or modify its character,) as cause of principal challenge, we choose to lay down no positive rule, but leave the subject, after having stated the rule as laid down by the authorities, to the exigency of the case that may arise. Whether the juror Morley was challenged peremptorily by the prosecution or by the defendants, does not appear. If he was thus challenged by the prosecution, the defendants were not injured. If challenged by the defendants, that fact should appear upon the record.

The name of not one of the jurors sworn and examined, as set forth in the bill of exceptions, was retained upon the list of jurors ultimately empannelled to try the issue. Upon the completion of the pannel of jurors who tried the issue, it seems that the defendants had exhausted but thirty-seven peremptory challenges. In consequence of the overruling of the challenges "for cause," of the defendants, not one of the objectionable jurors were retained, and we cannot perceive how the defendants could have been injured, even admitting the position of their counsel to be correct.

Without intending to determine here, whether the juror Morley, should have been set aside for principal cause, there is another error which we deem fatal to

the prosecution in this case. It appears from the bill
of exceptions, that, after the prosecution had chal-
lenged peremptorily six of the jurors called, one I. B.
Fairfield, one of the panel, was called and sworn in
like manner as the others, and after such examination
the prosecution challenged him peremptorily, after
having already been allowed and had used six peremp-
tory challenges, claiming the right to six such chal-
lenges for each defendant. The defendants objected to
such challenge, and insisted that the prosecution could
have only six peremptory challenges, whatever the
number of defendants might be. The fact that the
defendants objected to the challenge of the prosecu-
tion, shows that the juror was not acceptable to them,
and unless the right of challenge was absolutely given
to the prosecution by statute, it did not exist at all,
and the defendants have just cause of complaint.

The determination of the question here raised,
involves the construction of the several statutes upon
the subject, which we proceed to give.

Section 37, of chapter 97 of the Revised Statutes,
enacts as follows: "On the trial of criminal cases,
where the punishment is capital, the prosecuting officer
shall be entitled to challenge, peremptorily, six of the
persons returned as jurors, and no more; and on the
trial of criminal cases, where the punishment is not
capital, the prosecuting officer and the defendant shall
each be entitled to challenge peremptorily, four of
said jurors, and no more."

Section 4, of chapter 148 of the Revised Statutes,
provides, that "the district attorney, and any other
officer prosecuting an indictment, shall be entitled to
the same challenges that are allowed by law to parties
in civil causes."

Section 5, of the same chapter, provides that "Any person who is put on trial for an offence punishable with death, shall be allowed to challenge peremptorily twenty-four of the persons returned as jurors, and no more."

Again, chapter 48, of the Session Laws of 1854, amends section 5, of chapter 148 of the Revised Statutes, passed in consequence of the law abolishing capital punishment. Its language is as follows: "Section 5, of chapter 148, of the Revised Statutes is hereby amended so as to read as follows: 'Any person who is put on trial for an offence which would have been punishable with death, before the punishment of death was abolished by the passage of chapter 103 of the general acts passed in 1853, shall be allowed to challenge peremptorily, twenty four of the persons returned as jurors, and no more; and the prosecution shall be entitled to six peremptory challenges, and no more.'"

The effect of the act of 1854, merely preserves the right to the defendant put on trial for an offence punishable with death, previous to the abolition of the death penalty. We do not think it enlarges or restricts the rights of the State or the defendant, but leaves them as they were before. Upon the trial of indictments for a capital offence, when there are more than one defendant, each defendant is entitled to challenge twenty four jurors peremptorily. One or all may be found guilty, and each one must be regarded as defending for himself. Not so in regard to the prosecution. The State is prose cuting for one crime and though several may be guilty of it, all may be included in the same indictment, and thus make one prosecution, or each may be indicted separately. If,

therefore, the prosecuting officer desires to secure to himself six peremptory challenges for each defendant, he should prosecute each separately. But, while he cannot curtail the right of any defendant whom he may choose to join in the indictment, by adopting a joint prosecution against several, he thereby makes the State a party, one and indivisible, upon the one hand and each of the defendants a party on the other. The right to peremptory challenges is purely a creature of the statute, and it cannot be extended beyond its obvious purview. We are therefore of the opinion that the court below erred in allowing the prosecuting officer to challenge peremptorily, the juror Fairfield, he having already been allowed six such challenges. If the statute should be so construed as to allow the prosecuting officer six challenges for each defendant, he could multiply such challenges indefinitely by simply increasing the number of defendants. Such a construction ought not to be allowed, as it might defeat the very object and intent of the statute. We do not know, of course, why the prosecution challenged the juror. It is sufficient to know that he was to all appearance competent; that he was acceptable to the defendants, and that the challenge of the prosecuting officer was unauthorized by law.

Another error assigned is, that on the trial, the prosecution offered in evidence the deposition of the defendant, taken before the coroner, at the inquest, and reduced to writing by him, on the ground that it was given under oath, and could not be considered a voluntary confession; that the oath was administered and the deposition taken after suspicion had attached to the defendant, by the neighborhood, and without

caution or warning that his statements would be used against him, and he was not informed that he could decline answering any of the questions put to him.

We appreciate the full weight of the reasons urged in support of this objection, but we regard the rule of law, in cases of this kind, too well settled, and too salutary to be now disturbed ; and we see that this rule was observed by the court below in admitting the examination of the defendant taken on oath, before the coroner. The objection to it, that it was on oath, does not apply, unless the defendant at the time was charged with crime. The general rule is, that what a party says in relation to the offence, is admissible in evidence against him, whether on oath or not. To this general rule there are some exceptions. One exception, and the only one with which we now have to do, is, that the declarations, or admissions, or statements of the defendant shall not have been made when he is on oath, and charged with the offence ; or, in other words, if his statements be made on oath, while he is charged with the crime, they cannot be used in evidence against him.

The statement of the defendant in this case offered in evidence, was made before he was charged with the offence, and we do not see how we can exclude it because it was on oath, without excluding all admissions thus made, even if made on the trial of a civil suit. Suppose, that on the trial of an ordinary civil suit, the defendant had been a witness, and had deposed to facts sought to be used against him on the trial of this indictment. These declarations or admissions so made would be excluded if the rule contended for by the counsel for the defendant is to prevail. It is true, that the counsel insist that the pre-

vailing and openly expressed suspicion of, and the
circumstances surrounding him at the time, operated
as a moral restraint, equivalent to an actual arrest
upon a charge duly made. However this may be, it
affords no reason for overturning a salutary rule of
law, and substituting one, altogether indefinite, im-
practicable, and unsafe.

By the policy of the law, no person is compelled
to give evidence against himself or to testify to any
matter tending to criminate himself. And if, while
testifying before a magistrate, coroner, jury or else-
where, he be compelled to answer a question, to
which he had objected on the ground that his answer
might tend to produce that result, there is no doubt
but such answer would be incompetent evidence
against him on his trial ; but when the testimony is
voluntary we see no objection to its competency,
merely because it is rendered on oath, nor can we weigh
and calculate the moral influence or effect of mere
surrounding circumstances, such as suspicion, surveil-
lance, &c., nor can we assume that the defendant was
ignorant of his rights when he testified, and that he
supposed himself compelled to answer every question
put to him. On the contrary we must, in this as in
every other case, presume that he was cognizant of
his rights, and that his testimony was voluntary
A departure from these principles would be in viola-
tion of the fundamental rule, universally acknowledg-
ed, that ignorance of the law is no excuse for human
conduct. The administration of justice would indeed
be perplexed were we to depart from this maxim and
hold that a person should be presumed ignorant of
the law, or, that we would inquire into the degree of
his knowledge, and hold him to the consequences of his

54*

JUNE TERM
1854.

Schoeffler
vs.
The State.
act, or not, accordingly as we should be of opinion that he was acquainted with, or ignorant of the law applicable to the act he was about to commit. The case of *Regina vs. Wheeler*, 2 *Moody's Cr. Ca.* 45, was decided before all the judges of the Exchequer Chamber, except Park J. and Gurney B. who were all of the opinion that the testimony of the prisoner when he was examined as a witness before Commissioners of Bankruptcy concerning certain bills alledged in the indictment to have been forged by himself, was admissible. This seems to have been the deliberate opinion of all the judges, upon the question, and seems to settle the law upon the subject in England. Some of the cases cited by the counsel for the prisoner do not seem to be applicable. In the case of *Reg. vs. Wheeler*, 8 *Car. and P.* 250, it appears that the prisoner was charged with the crime of murder, and made a statement at the inquest which was taken down. As it appeared to be on oath it was rejected. It seems probable that this was the case of the examination of the prisoner himself, and was for that reason rightly rejected (*See* 2 *Russ, on Cr.* 855, 860, *and notes.*) After looking at all the cases we do not feel justified in holding, that because the confessions were made on oath and when the prisoner was testifying as a witness, not then charged with the crime, they should be rejected. We do not think that the circumstance, that the coroner or magistrate who held the inquest, or that any or all of the persons present suspected the guilt of the defendant, ought to affect the question. It would introduce not only a very loose and uncertain, but a very dangerous' principle, to hold that suspicion entertained by those who were acquainted with the circumstances

attending the commission of the crime, should be
permitted to operate to the exclusion of the evidence.
The suspicion, if it existed, might be very vague;
it might attach to the defendant in some degree, and
in some degree also to others in some way supposed to
be connected with the defendant in the perpetration
of the offence ; and if he is suspected, how can it be
ascertained that he was aware of the fact when he
testified ? The case of *Hendrickson vs. The People*,
recently decided in the New York Court of Appeals,
and reported in the American Law Register for July,
1854, fully sustains the views here expressed. It
contains an elaborate review of all the cases bearing
upon the question, and ought, we think, to settle the
law of the subject, as well from the authority which
it arrays, as by the profound reasoning by which the
conclusions of the Court are sustained.

We can readily conceive of circumstances in which
a person may be placed which would be equivalent
to an actual arrest. He may be surrounded by those
whose suspicions are excited to a degree amounting
to accusation, and be fully aware that his escape would
be impossible if attempted, and be pressed with
questions in such manner and under such circumstan-
ces as to render his answers compulsory. But this
would be in the nature of duress. His statements
could not be voluntary, and another rule of law would
come to his relief. All confessions or admissions ex-
torted by fear or induced by hope of favor, are pre-
cluded from being used against him, and in all such
cases, if it appears that his statements were not vol-
untary, whether under oath or not, they should be
excluded. But it is unnecessary to pursue this sub-
ject further. In this case the prisoner was examined

the same as other witnesses, and the mere fact that he was examined under oath, although suspected, is not sufficient to render his statement incompetent.— It is only when the circumstances in which he is placed are such as to amount to duress, or to show that his statements are not voluntary, that they ought to be rejected.

The next error assigned is, that the Court erred in not permitting the husband of a co-defendant to be sworn as a witness.

We do not think the objection well taken. The wife of the witness was on trial with this defendant, and it would be contrary to the universal practice of Courts to permit a witness, under such circumstances, to be examined. It is insisted by the counsel for the prisoner, that our law allowing married women to hold property in their own right, has destroyed the reason of the rule of exclusion, and hence, in this State the rule itself should be abrogated. But the rule of law which precludes a husband or wife from being a witness when the other is a party to the suit, is based upon other and higher grounds than that their pecuniary interests are identical. To permit them to testify would be to compel them to disclose all they have learned in their mutual intercourse and all that may have been communicated in the confidence which the conjugal relation inspires, and would destroy that harmony which is the primary source of social order and happiness. It would prove a temptation to perjury in many cases it is feared, too great for human virtue to resist, and it is hoped that the day is far distant when the judicial tribunals of the country will open the door to the numerous evils which would rush in, upon the violation of this prin-

ciple of the law, based upon the profoundest wisdom and maintained so long with undeviating tenacity.

If the testimony of the father was material to the defence of the son, there was a legal mode by which it might have been available to him, and there was no error nor hardship in the ruling of the judge.

The next assignment of error is, that the judge erred in refusing to grant a new trial, for the reason that the verdict was against the evidence.

We perceive no error in the refusal. We, however, do not intend to express any opinion as to the propriety of the verdict which was rendered in this case. When a new trial is asked on the ground that the verdict is against evidence, the granting or refusing of it is, in a great degree in the discretion of the Court, and it is only in the extreme case of an abuse of that discretion that this Court will interfere. The decision of the Court below, on the motion, was not such an abuse of discretion, and we cannot therefore call it erroneous.

We have gone over the points presented by this case, because they are important, and some of them, at least, new in this State.

The majority of the court deem the restriction of the prosecution to the number of peremptory challenges prescribed by the statute, how many soever the prosecuting officer may choose to include in his indictment, as requisite to the safe administration of justice. He cannot be permitted to multiply his challenges *ad libitum*, by increasing the number of defendants. The contrary doctrine might, in many cases, easily imagined, work great hardship, and endanger the purity of the jury system.

The judgment of the court below is reversed, and *venire de novo* awarded.