THE STATE v. MANN, *Appellant.*

1. Criminal Practice: CONTINUANCE. The action of the trial court, in overruling an application for a continuance, will not be reviewed in the Supreme Court, where it is not assigned as error in the motion for a new trial.

2. ———: CHANGE OF VENUE. The objection that the trial court transferred the cause on application by defendant for a change of venue to a county alleged in the application to be so prejudiced against him as to prevent him from having a proper trial there, comes too late for the first time in the appellate court.

3. ———: GRAND JURY: WAIVER. The objection that the record does

| 83 | 589 |
| 31a | 301 |
| 83 | 589 |
| 44a | 139 |
| 83 | 589 |
| 108 | 171 |
| 83 | 589 |
| 119 | 430 |
| 83 | 589 |
| 57a | 212 |
| 83 | 589 |
| 174 | 658 |

not show that the grand jury as a body returned the indictment into court, if otherwise well taken, comes too late after verdict.

4. **Evidence**: STATEMENT OF ABSENT WITNESS, CONTRADICTION OF. Where the defendant in a criminal case reads as the evidence of an absent witness the statement contained in the affidavit for continuance of what the evidence of the witness would be if present, the state may contradict his testimony or impeach the witness as if he were present. And the state may offer the witness himself to contradict such statement so read in evidence.

5. **Murder**: EVIDENCE. On a trial for murder it is not competent for the defendant to prove that a third person had malice against the deceased and had threatened to kill him. It would, however, be competent to show that such person did in fact kill the deceased.

6. **Jurors, Examination on Voir Dire**: PEREMPTORY CHALLENGES. The trial court committed error in refusing to permit defendant to inquire of the jurors on their *voir dire* if any of them belonged to an association having for its object the prosecution of crime or aid to courts and officers in enforcing the criminal laws. The inquiry should have been permitted in order to enable the accused to exercise judiciously his right of peremptory challenges.

7. ——: Jurors however on such examination on their *voir dire* are not bound to answer impertinent or irrelevant questions, or those to which an answer may tend to their disgrace, infamy or self-accusation of crime.

*Appeal from Newton Circuit Court.*—HON. M. G. McGREGOR, Judge.

REVERSED.

*M. E. Benton* for appellant.

(1) The court should have sustained the motion to quash the indictment because not returned into court by the grand jury. R. S. sec. 1797. (2) The testimony of the witness, Stevens, should have been withdrawn on application therefor, it having been given on misinformation, or if once admitted should have been held to be the testimony of said witness. R. S. sec. 1886. (3) The court erred in refusing instructions as asked by defendant. *State v. Talbott*, 73• Mo. 352; Wills' Circum Ev. pp. 47 and 77; 1 Greenlf. Ev., p. 243. (4) The

trial court erred in refusing to permit the defendant's counsel to ask the jurors on their *voir dire* if they belonged to any association for the prosecution of crime. 3 Wharton's C. L., secs. 3010, 3011, 3012; 1 Cowen 432; 13 N. H. 536; 6 Cush. 177. (5) Defendant's motion for a new trial should have been sustained on the ground that it appears that some of the jury had decided the case before the testimony was presented. (6) The testimony of McDonald should not have been excluded; it tended to show that one of the state's witnesses had a grievance against deceased, made threats against him and had an opportunity to kill him.

*D. H. McIntyre*, Attorney General, for the state.

(1) The denial of defendant's application for a continuance is not made a ground for a new trial and hence this court will not regard it. *State v. Preston*, 77 Mo. 294. (2) The court did not err in permitting the state to introduce the witness, Stevens, for the purpose of contradicting the affidavit read in evidence by defendant. (3) It was incompetent for defendant to show that others had malice against the deceased and had threatened to kill him: *State v. Davis*, 77 N. C. 483; *State v. Jones*, 80 N. C. 415; Whar. Cr. Ev., sec. 225. (4) The instructions given for the state properly declared the law. *State v. Alexander*, 66 Mo. 158: *State v. Holme*, 54 Mo. 153; *State v. Mitchell*, 64 Mo. 191; *State v. Talbott*, 73 Mo. 347; *State v. Kotovsky*, 74 Mo. 247; *State v. Curtis*, 70 Mo. 594; *State v. Ellis*, 76 Mo. 207. (5) The record entry was sufficient as to the return of the indictment into court by the grand jury. Besides objection to the constitution of the grand jury comes too late after verdict. *State v. Smallwood*, 68 Mo. 192. (6) There is nothing to show that the jury disobeyed the charge of the court or that any juror made up his mind before the case was finally submitted for their consideration. The affidavit in support of the motion for new trial, as to the

prejudice of a juror, is not a part of the bill of exceptions. There is no record that it was ever filed in support of the motion, or that it was ever brought to the attention of the trial court.

HENRY, C. J.—The defendant was indicted in the circuit court of McDonald county at the February term, 1884, for the murder of one A. W. Chenowith, and the cause was taken to Newton county by change of venue. At the August term, 1884, he was tried and found guilty of murder in the first degree, and from the judgment has appealed to this court. He made an application for a continuance, based upon the absence of witnesses whose testimony he deemed material, and the prosecuting attorney, agreeing that the defendant's affidavit, wherein it stated what the witnesses would testify to, might be read as their testimony, the application was overruled, and it is sufficient to say, as to any alleged error committed by the court in that ruling that it is not one of the grounds relied upon in the motion for a new trial.

In his application for a change of venue, he stated that the inhabitants of the counties of McDonald and Newton were so prejudiced against him, that he could not have a fair trial in either of those counties. For what reason the court sent the cause to Newton does not appear, but no exceptions were taken to the order sending it to Newton, nor was the court's attention called to this alleged error at any stage of the proceedings, and it is too late to raise the question in this court.

Another alleged error is, that when the indictment was returned to the court, it does not appear from the record that any of the grand jury were present except their foreman. The statute, section 1797, provides that: "Indictments found and presentments made by a grand jury, shall be presented by their foreman, in their presence to the court." The record entry is as follows: "And afterwards, to-wit: on the 6th day of February, 1884,    *    *    *    the grand jury heretofore em-

paneled, sworn and charged, return into open court, by their foreman, the indictment." This objection comes too late, even if it is not so clear, from the entry, that the whole panel was present when the foreman returned the indictment to the court. *State v. Smallwood*, 68 Mo. 192. Clerks should be more particular in making such entries. It would have been just as easy to say: "The grand jury heretofore empanneled, sworn and charged appeared in court, and, by their foreman, return into court, etc." This we take to be the meaning of the entry.

The defendant's application for a continuance was based upon the absence of witnesses, among others named in the affidavit, of one Stevens. That portion of the affidavit containing a statement of what he would testify to, was read by defendant to the jury as his testimony, and when the state, at the proper stage of the trial, called said Stevens as a witness, the defendant asked the court to exclude the statement read by him from his affidavit as the testimony of said Stevens, alleging that he fully believed that Stevens would so testify, but, after Stevens' appearance in court had learned that the statement was not what he would testify to. The court overruled the motion and Stevens' testimony was different from, and contradictory of, that which it was alleged in defendant's affidavit it would be. The action of the court in that regard is complained of. To allow such practice, as that insisted upon by defendant's counsel, would open a door to intolerable abuses in criminal trials. With the consent of the state he introduced, as the evidence of a witness, what he swore that the witness would testify to, if present. The testimony was material, and when the state called that very witness to the stand defendant asked to withdraw his testimony. He might, upon equally as good grounds, have asked to withdraw from the jury the testimony of any other witnesses, whom, he learned would be contradicted by witnesses introduced by the state. He may, if he desires, recall a

witness to explain his testimony, or to correct any error into which he may have fallen, but he cannot have the evidence withdrawn from the jury.

When the defendant, in a criminal trial, reads, as the evidence of an absent witness, his statement of what the evidence of that witness will be, the state may contradict his testimony, or impeach the witness, as if he were present. Sec. 1886, R. S. There is, therefore, no reason why that person himself should be excluded as a witness, when offered by the state. The state would have the right to introduce any person who had testified for the accused, to contradict himself if such a culprit could be found among the defendant's witnesses, and no reason occurs to us for holding otherwise, in regard to one whose testimony, as an absent witness, has been introduced.

Nor did the court err in excluding testimony of threats made against the deceased by another party, one of the state's witnesses, who, also, had a grudge against deceased. *State v. Davis*, 77 N. C. 483 ; *State v. Jones*, 80 N. C. 415. In the cases above cited, the defendants offered to prove, not to impeach a witness, but as testimony in chief, that another person had malice against the accused and had threatened his life. The court excluded it as irrelevant. In the case at bar, one Matney, a witness for the state, was asked by defendant's counsel, on cross-examination, if he had not threatened the life of Chenowith, and he answered that he had not; and defendant offered to prove that he had, but the evidence was excluded. Mr. Greenleaf in his work on Evidence, 1 vol., sec. 449, says : "It is a well-settled rule, that a witness *cannot be cross-examined as to any fact which is collateral and irrelevant to the issue, merely* for the purpose of *contradicting him* by other evidence, if he should deny it, thereby to discredit his testimony." It would, of course, have been competent to prove that the witness killed Chenowith, but, as was observed by the Supreme Court of North Carolina in the

*State v. Davis, supra*: "This could only have been done by proof connecting Peck with the *fact*, that is with the perpetration of some deed entering into the crime itself." Mr. Wharton in his work on Criminal Evidence, sec. 225 (8 Ed.) says that: "On an indictment for murder, the admissions of other persons that they killed the deceased, or committed the crime in controversy, are not evidence; and evidence of threats by other persons is inadmissible." *State v. Johnson*, 30 La. Ann. 921; *Walker v. State*, 6 Tex. App. 576; *People v. Murphy*, 45 Cal. 137.

With the motion for a new trial appears the affidavit of Jno. McBrian to the effect that one of the jurors who tried the cause, said to affiant: "They had better hang the rascal (meaning defendant) than to be delaying time over him," and "that he had lost or would lose fifty dollars on account of it." There is no indorsement on the affidavit, nor any thing in the record showing that it was ever filed in the cause, or that the attention of the trial court was ever called to it; and the eleventh ground relied upon for a new trial, is the only one which relates to that subject, and that is as follows: "The court failed to admonish the jury not to converse among themselves on any subject connected with the trial, or to form or express an opinion thereon, until the cause should be finally submitted to them, and the jury did in fact violate their duty in that regard, and did talk about the case, and some of them made up an opinion on the case before it was finally submitted to them." This objection is based upon misconduct of the jury, after the trial commenced, while the affidavit relates to what occurred before.

On their *voir dire*, the panel of forty were asked the following questions: "Do you, or either of you belong to any organization or association having for its purpose the prosecution of criminal cases, or the aid of courts or officers to enforce the criminal laws in criminal cases, including this one?" 2nd, "Have you or either of you

signed, or authorized any person to sign for you, any petition or application to this or any other court in this state to push the law, or urge trials or prosecutions in this or any other criminal case, or cases generally, including this one?" 3rd, "Have you or either of you taken any steps within the past year to urge stronger or speedier prosecutions in criminal cases, including this one?" On objection by the state, the court ruled that the questions were improper, and would not permit the jurors to answer them.

In some of the states it seems the questions to be propounded to jurors are prescribed by statute, and it is there held that it is within the discretion of the judge, whether other questions than those prescribed by the statute shall be propounded. *Com. v. Gee*, 6 Cushing 174; *Pierce v. State*, 13 N. H. 536. In the latter case it was determined that other than the statutory questions might be asked. Our statute does not prescribe the questions to be propounded to jurors. It declares who shall be incompetent, as in section 1893, a member of the grand jury by which the indictment was found; by 1894, persons akin to the prosecutor or defendant, and, when the indictment alleges an offence against the person, or property of another, the injured party, or any one akin to him; by section 1895, persons whose opinions preclude them from finding a defendant guilty of a capital offence, and by sections 1896 and 1897, witnesses and persons who have formed or expressed opinions as to the guilt of the accused. The statute gives the accused in a capital case, the right to challenge peremptorily, twenty of the panel. The examination of such persons on their *voir dire*, is necessary, not only to ascertain who are competent jurors, but, also, to enable the accused to exercise judiciously his right of peremptory challenge.

One may not be incompetent as a juror, and yet may stand in such relations to the prosecutor, or the cause, as, if known to the accused, would be deemed a good reason for peremptorily challenging him. He is entitled to an

impartial jury, and may make such inquiries as will enable him to secure that constitutional right. Must he exercise his right of peremptory challenge, without the privilege of making inquiries, except such as relate to the competency of the panel? In capital cases, the accused is imprisoned and is brought from prison and there for the first time, possibly, meets the forty men summoned as jurors in his case, and, if blindly to make his peremptory challenges, may strike from the panel the very men whom he would have wished to retain, had he known their antecedents. If such is the law, the right of peremptory challenge may prove a snare and, at best, is of no earthly value to the accused.

Mr. Wharton, in his Criminal Practice, section 670, says: "Challenges to the polls for favor take place when, though the juror is not so evidently partial as to amount to a principal challenge, there are reasonable grounds to suspect that he will act under some undue influence or prejudice, and when these grounds involve disputed questions of fact." Judge Gaston, in the *State v. Benton*, 2 Dev. & B. 212, said: "An opinion imperfectly formed    *    *    *    does not constitute a cause of principal challenge, although it may be urged by way of challenge *to the favor* which is to be allowed or disallowed as the triers may find the fact of favor or indifferency." So in Wisconsin, New York and other states, the distinction between challenge for principal cause, and challenge for favor is retained in their practice, and whether the facts exist upon which the party would make a challenge for favor, is a question to be tried by triers, designated by the law. The distinction between challenges for principal cause and challenges for favor is clearly stated as follows: "In the former case, the facts being ascertained, the law presumes such a bias or prejudice as absolutely to disqualify the person to act as a juror in the particular case.    *    *    *    The latter involves an issue of fact, which is to be found by triers duly appointed, or by the court,

triers being waived, and the issue submitted." *Schoef-fler v. The State*, 3 Wis. 827, 828.

In this state we have no technical challenges for favor. If one summoned as a juror does not fall within any of the classes of persons declared incompetent by the statute, the accused has no challenge but the peremptory challenges, and under this, he must make his challenge for favor. Hence the importance and propriety of allowing a liberal latitude in the examination of the panel, on their *voir dire*. Mr. Wharton, sec. 676, says: "The mere fact of a juror purging himself from disqualification on his *voir dire*, does not preclude the party questioning him from challenging him for favor, and producing evidence before the court or the triers as the practice may be, to disprove his testimony." In *Lavin v. People*, 69 Ill. 303, the defendant was indicted for selling intoxicating spirits in violation of law, and to each juror he propounded the following questions: "First. Are you a member of a temperance society? Second. Are you connected with any society, or league, organized for the purpose of prosecuting a certain class of people, under what is called the new temperance law of the state; or have you ever contributed any funds for such a purpose?" The state objected, and the court sustained the objection. On appeal the Supreme Court said: "We are not, however, in this case, called upon to decide whether an affirmative answer to the questions propounded to the jurors would have been ground of challenge for cause. The questions were asked with a view to call out facts upon which to base a peremptory challenge, and for this purpose they were proper, and should have been answered." Again the court observed: "It is the policy of our laws to afford each and every person who may have a cause for trial in our courts, a fair and impartial trial. This can only be done by having the mind of each juror who sits to pass judgment upon the life, liberty or rights of a suitor entirely free from bias or prejudice. In order to determine whether

the person who may be called as a juror possesses the necessary qualifications, whether he has prejudged the case, whether his mind is free from prejudice or bias, the suitor has the right to ask him questions, the answer to which may tend to show he may be challenged for cause, or disclose a state of facts from which the suitor may see proper to reject such juror peremptorily."

In the case of *People v. Bodine*, 1 Denio 308, Judge Beardsley said: "A fixed and absolute opinion may be necessary to sustain a challenge for *principal* cause, but not so where the challenge is *for favor*. In the first species of challenge the result is a conclusion of *law* upon ascertained facts, but in the latter, the conclusion is a matter of *fact*, to be found by the triers." Again: "It is competent to prove that the juror challenged and the opposite party are in habits of great intimacy; that they are members of the same society, partners in business, or the like. The feelings of the juror may, also, be shown, and that whether they amount to positive partiality or ill-will, or not, as his views and opinions, also, may be, whether mature, absolute or hypothetical. Indeed, any and every fact or circumstance from which bias, partiality or prejudice may justly be inferred, although very weak in degree, is admissible on this issue." See *People v. Reges*, 5 Cal. 347; Kelley's Criminal Law and Practice, sec. 332.

Innumerable authorities might be cited to show that the ruling of the circuit court, refusing to permit the jurors to answer the questions propounded was erroneous, but we think that the above are sufficient. This right, however, is to be limited by the purpose for which it is given. Jurors are not bound to answer impertinent or irrelevant questions, or those to which an answer may tend to their disgrace or infamy, or self-accusation of crime.

The instructions given by the court very fairly, fully and clearly declared the law applicable to the case, in all its phases, except that wherein it defined the word

"deliberately," to mean "in a cool state of the blood, etc."

The deceased was waylaid and assassinated. There is no question, on the evidence, that he was murdered in cold blood, and the only question was, who committed the deed, and the error, in the definition of the term "deliberately" could not, therefore, possibly have prejudiced defendant. *State v. Talbott*, 73 Mo. 347. For refusing to permit the jurors to answer the questions propounded to them by the accused, the judgment is reversed and the cause remanded. All concur except Norton, J., who dissents. Sherwood, J. concurs in the reason given for reversal and, also, for another reason.

Norton, J., Dissenting.—When a party is brought to trial on a charge for murder in the first degree he is entitled under our statute to challenge a juror for cause, and in order to ascertain whether a juror is subject to such challenge, an examination (called the *voir dire* examination), is had before the court, and according to my view of the law, in conducting such an examination, only such questions can be propounded to the juror, which if answered in the affirmative would tend to establish the existence of such cause as would give the defendant a right to challenge him as incompetent. Tested by this rule the questions propounded in this case were not proper ones, for if the juror had answered and said that he belonged to an organization, the object of which was to aid in the enforcement of the criminal law, including the case then about to be tried, it would have afforded no ground of challenge for cause, it being the duty of every good citizen to render such whether he belonged to such organization or not.

The mode of proceeding by challenge for favor referred to in the opinion of the court has no existence in this state, and in lieu of that method, in a case like the present, the court is required by means of the *voir dire* examination to procure forty qualified jurors, a list of

whom is to be furnished the defendant and he is given the right to challenge peremptorily (whether favor exists or not) twenty of this number, and he is, also, given forty-eight hours after being furnished such list in which to make up his mind as to how he will exercise this right. This length of time was, doubtless, given to enable a defendant to acquire such information as might be necessary to enable him to exercise to the best advantage his right of challenge. If further information is desired the proper practice, it seems to me, would be to ask all or any of the panel of qualified jurors, with the permission of the court, such questions, as under the practice, when challenges for favor existed, were allowable, and if, in such case, it appeared that the court abused its discretion in limiting too narrowly such an examination, then a case would be made for review by this court. No such case having been made I do not agree to the conclusion reached by the court.