## STATE OF MISSOURI, Respondent, v. BESS HOELSCHER, Appellant.*

St. Louis Court of Appeals.  Opinion filed June 18, 1925.

1. **JURY: Voir Dire Examination: Ku Klux Klan: Refusal to Permit Inquiries as to Membership: Error.** On *voir dire* examination of jurors in a criminal case, defendant being charged with selling intoxicating liquors, refusal of the trial court to allow defendant's counsel to examine certain jurors as to their membership in, and affiliation with, the Ku Klux Klan and to compel certain members of the jury panel to answer such question, *held* error.

2. **INDICTMENT AND INFORMATIONS: Intoxicating Liquors: Indictment Following Language of Statute: Sufficient.** An indictment charging the selling of intoxicating liquors which followed the language of the statute, *held* sufficient and not open to the objection that it failed to allege that such liquor was capable of being used as a beverage.

*Headnotes 1.  Jury, 35 C. J., Section 434; 2.  Indictments and Informations, 31 C. J., Section 260; Intoxicating Liquors, 33 C. J., Sections 424, 437.

Appeal from the Circuit Court of Marion County.—*Hon. Charles T. Hays,* Judge.

REVERSED AND REMANDED.

*E. W. Nelson* and *Lewis O'Connor* for appellant.

(1) The court declined to allow defendant to examine on *voir dire* examination certain jurors as to their membership in and affiliation with the Ku Klux Klan and declined to require such jurors to answer the following question: "Are you a member of or have affiliated with or attended any meetings of the Ku Klux Klan organization?" This was error because the information sought was certainly calculated to have enabled appellant to intelligently exercise her peremptory challenges. State v. Mann, 83 Mo. 589; State v. King, 174 Mo. 658; State v. Miller, 207 S. W. 798; Bennett v. State, 261 S. W. 1036; Reich v. State, 251 S. W. 1073; Bensen v. State, 254 S. W. 794-795; Welk v. State, 257 S. W. 1098; Belcher v. State, 257 S. W. 1098. (2) The trial court erred in suggesting to certain jurors, in open court, the means and method by which they could evade a positive affirmative answer as to their membership and affiliation with the Ku Klux Klan. State v. Mann, 83 Mo. 589; State v. King, 174 Mo. 658; State v. Miller, 207 S. W. 798; Bennett v. State, 261 S. W. 1036; Reich v. State, 251 S. W. 1073; Bensen v. State, 254 S. W. 794-795; Welk v. State, 257 S. W. 1098; Belcher v. State, 257 S. W. 1098. (3) The verdict of the jury is the result of passion and prejudice on the part of the jury and is grossly excessive. State v. Predible, 165 Mo. 353; State v. Young, 119 Mo. 526. (4) The indictment does not charge a violation of the Missouri Prohibition Laws, and is insufficient in law. Sec. 6588, R. S. 1919, as Amended Laws 1921, p. 431; Sec. 6602, R. S. 1919; State v. Molten, 276 Mo. 358-359; State v. Wade, 267 Mo. 256; State v. Marcus, 171 Mo. App. 28; State v. Jump, 176 Mo. App. 299; State v. Mysenberg, 166 Mo. 25. (5) Instruction No. 1 is erroneous in that it tells the jury that they may convict the defendant, even though the liquor alleged to have been sold is not potable or capable of being used for beverage purposes. Cases cited under point four (supra).

*Roy Hamlin,* Prosecuting Attorney, and *Ben Ely, Jr.,* Assistant Prosecuting Attorney, for respondent.

NIPPER, J.—Defendant was convicted in the circuit court of Marion county on a charge of selling intoxicating liquors, to-wit, one pint of whiskey, containing one and one-half per cent or more of alcohol. She appeals from that conviction, and asks that the case be reversed: First, because the indictment does not define or describe the intoxicating liquor as it fails to allege that such liquor was capable of being used as a beverage; and, second, that the court erred in refusing to allow defendant's counsel to examine certain jurors on their *voir dire* examination as to their membership in, and affiliation with, the Ku Klux Klan, and refused to compel certain members of the jury panel to answer such question.

We will take up the last proposition first, because it is the one most strenuously urged, and in fact the only one of merit as we see it. When the regular panel of jurors called for the trial of this case were being examined on their *voir dire,* counsel for defendant sought to elicit from certain members of the panel whether or not they were members of, associated with, or attended meetings of, an organization called the Ku Klux Klan. The trial judge, before requiring the jurors to make any answer to this question, asked certain jurors if they belonged to any organization which imposed an obligation on its members to keep secret their membership in such organization. Upon such question being answered in the affirmative, the court asked if such jurors refused to answer by reason of such fact, and stated that if any juror refused to answer because of the fact that he had taken an obligation not to reveal his membership, he would not be required to answer. Several members of the panel refused to answer the question, and the court sustained them in their refusal. Defendant's counsel then sought the information as to whether or not such jurors had attended meetings of the organization known as the Ku Klux Klan, and also asked further questions which indicated that counsel was seeking to ascertain something of the object and purposes of the organization. Was

the trial court's action in this respect error for which this case should be reversed?

This is, perhaps, the first time this identical question has reached the appellate courts of this State, although the extent of an accused's right to make an examination of jurors for the purpose of exercising his or her peremptory challenges has been discussed several times.

Perhaps the most exhaustive discussion of the question in this State is found in State v. Mann, 83 Mo. 589. In the Mann case the defendant was being tried for murder. His counsel asked the panel of forty on their *voir dire* whether any of them belonged to any organization or association having for its purposes the prosecution. of criminal cases, or the aid of courts in the enforcement of criminal law, and whether or not such prospective jurors had taken any steps to urge stronger or speedier prosecution in criminal cases. The trial court held these questions improper, but the Supreme Court held that such questions were proper and relative, and that counsel for the accused had a right to the information sought by the questions asked for the purpose of enabling the accused to exercise judiciously his right of peremptory challenge. In discussing that proposition, the court said:

"One may not be incompetent as a juror, and yet may stand in such relations to the prosecutor, or the cause, as, if known to the accused, would be deemed a good reason for peremptorily challenging him. He is entitled to an impartial jury, and may make such inquiries as will enable him to secure that constitutional right. Must he exercise his right of peremptory challenge, without the privilege of making inquiries, except such as relate to the competency of the panel? . . . If such is the law, the right of peremptory challenge may prove a snare and, at best, is of no earthly value to the accused."

Many authorities are referred to as sustaining the proposition that the accused has a right to secure information of the character sought to enable him to make his peremptory challenges in a judicious and intelligent

way. And, in concluding its discussion of that question, the court said:

"Innumerable authorities might be cited to show that the ruling of the circuit court, refusing to permit the jurors to answer the questions propounded was erroneous, but we think that the above are sufficient."

The Mann case was cited with approval by our Supreme Court in State v. Miller, 207 S. W. 797, wherein it was held that counsel for defendant had a right to examine the panel on their *voir dire* as to whether or not such jurors, or any of them, attended a particular church where it appeared one of the important witnesses for the prosecution was the pastor of such church. The court held that such information was useful and proper for the defendant to have in making his peremptory challenges.

The question of whether or not counsel for accused has a right to inquire into a juror's affiliation with, or membership in, the Ku Klux Klan, has been before courts of last resort in several of our sister states. Illinois, Arkansas, Texas, and Oklahoma have had the question up for discussion. In each and every instance it was held that where there were any facts or circumstances in any way connected with the case, and which would in any way indicate that such membership might in any way influence the juror in passing upon the guilt or innocence of the accused, such information was proper, and it was error for the trial court to refuse to permit counsel for accused to elicit such information.

In Reich v. State (Tex. Cr. A.), 251 S. W. 1072, the Court of Criminal Appeals of Texas held, in a prosecution for manufacturing intoxicating liquor, that defendant's counsel had a right to question veniremen on their *voir dire* as to whether they were members of the Ku Klux Klan. Many other cases may be cited from the Texas courts to the same effect. This is also true of Arkansas and Oklahoma.

Perhaps the most exhaustive discussion of this identical question will be found in Johnson v. State (Okl.), 230 Pac. 525. In that case a negro was charged with larceny. His counsel sought to elicit information as to whether certain members of the panel of jurors were associated with the Ku Klux Klan, and were bound by any oath, rule, or obligation of the order amounting to bias. The Criminal Court of Appeals of Oklahoma held that it was error to refuse to permit the accused to obtain such information, not that the information would necessarily furnish grounds for challenge for cause, but that defendant was entitled to such information in order to enable him to make his peremptory challenges intelligently; and, in announcing its conclusions, the court, we think, laid down a fair rule to be followed in such matters, in the following language:

"Sound reason would indicate that in a case like this, where such an inquiry is made in good faith, predicated upon probable cause, within reasonable bounds, limited by a fair discretion of the court, permission should be granted to interrogate prospective jurors concerning specific lodge affiliations that may have a tendency to impair the rights of the accused, to the end that he may be tried before a jury that is in fact impartial. Counsel should be limited and restrained from pursuing such inquiry in a captious manner; he should not be permitted to unnecessarily prolong the trial by inquiries of a frivolous nature or concerning facts having only a remote or speculative bearing upon the qualifications of jurors. On the other hand, the court should be careful to refrain from arbitrarily depriving the accused of a fair opportunity to ascertain any bias, express or implied, that the juror may have or seem to have, in order that a challenge may be interposed for cause, or peremptorily, as the case may be."

The learned prosecutor, in his printed argument in this court, has, with commendable fairness, stated that, if he thought the question of membership in the Ku Klux

Klan had any real bearing upon this case, he would be the last person to seek to aid a juror in sustaining his right to refuse to answer such question. But the question of what the prosecuting attorney thinks about matters of this kind does not necessarily govern. An affirmative answer to the questions asked by defendant's counsel would not necessarily afford any grounds for challenge for cause. The statute prescribes these grounds, but the statute does not prescribe the questions to be asked jurors in determining their qualifications. The defendant has a right to a fair and impartial trial before a jury of her peers, and she should not be required to make her peremptory challenges without the privilege of making inquiry with respect to the question of membership in an organization that has in recent years been condemned and vindicated, exalted and abhorred, denounced and justified, despised and praised, in almost every forum where men are wont to meet and discuss questions of more or less public interest. The right of examination, of course, should be limited to proper and pertinent questions, and jurors should not be required to answer questions that are captious, impertinent, or irrelevant to the issues involved, nor should they be required to answer questions which would tend to their disgrace or infamy. But the questions asked in this case, and the information sought to be obtained, was proper if the right to trial by a fair and impartial jury is to remain inviolate. The information sought was within reasonable limits, and the trial court erred in refusing to permit counsel to examine the panel with respect to their affiliations with, or membership in, the Ku Klux Klan.

There is no merit to the point made by defendant that the information is insufficient. It follows the language of the statute so far as is necessary, and is not open to the objections urged by defendant. See State v. Stanley, decided by this court on May 5, 1925, and not yet published. It follows, however, from what has been said

that this judgment must be reversed, and the cause remanded. *Daues, P. J.,* and *Becker, J.,* concur.