STATE of Missouri, Respondent,

v.

Darryl Samuel GRANBERRY, Appellant.

No. 56697.

Supreme Court of Missouri, En Banc.

Sept. 11, 1972.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Alfred I. Harris, and Samuel Raban, St. Louis, for appellant.

MORGAN, Judge.

A jury found defendant guilty of first degree murder and assessed his punishment at death.

Based on the state's evidence, which was uncontradicted, a jury reasonably could have found: that one Joseph Tucker was working as the attendant at Clark's Service Station located at 8341 Olive Street Road in St. Louis County during the early morning of December 12, 1969; that at approximately 1:30 A.M. several Negro boys arrived in an automobile; that after purchasing cigarettes and soda, they proceeded to rob Mr. Tucker at gun point; that before the robbers left, several persons arrived at the scene—two waitresses from a nearby drive-in, an officer with persons who had run out of gas, three occupants of an automobile seeking directions, officers responding to a call placed by the waitresses and several others; that many shots were exchanged between the robbers and the officers; that when the encounter was over, it was found that one officer, Wilbert James Downey, had been mortally wounded by a shot from a .22 caliber pistol and a shot from his own .38 caliber revolver; and, that defendant was lying on the

floor in the station with a bullet wound in his chest with the .22 pistol on the floor by his head. No useful purpose could be served by accounting for the movements or actions of the many persons present. It is sufficient to say that two of the robbers escaped, and that defendant and two others were jointly indicted for the murder of the named officer.

■ First, it is submitted that the trial court erred in ordering a severance and having defendant stand trial alone when a severance had not been requested by either of the three jointly indicted. Some ten pages of defendant's brief on appeal are allotted to this point. However, it is conceded that Supreme Court Rule 25.07, V.A.M.R., is controlling and the point as made must stand or fall on a reasonable and logical interpretation of that rule. (See also Sections 545.880 and 545.885, RSMo 1969, V.A.M.S., as amended Laws 1963, p. 670.)

The rule, in part, provides: "(a) Except as otherwise provided in subsection (b) hereof, when two or more defendants are jointly charged with the commission of a felony, any one defendant, before announcing himself ready for trial at any term of the court, if he require it, shall be tried separately. In other cases defendants jointly indicted or informed against shall be tried separately or jointly in the discretion of the court.

"(b) 1. When two or more defendants are jointly charged with an offense under sections 559.260, 559.270 or 563.230, RSMo, they shall be tried jointly or separately in the discretion of the court; except that if there is evidence that would be admissible against one defendant, but inadmissible as to one or more other defendants if all are tried jointly, the defendant against whom the evidence is admissible, upon timely motion made by any other defendant against whom the evidence is inadmissible, shall be tried separately."

■ Paragraph (a) gives the right to request a severance to any defendant charged with a felony except in those instances enumerated in paragraph (b). Those exceptions are limited to those particular sex-related crimes as are identified in Sections 559.260, 559.270 and 563.230. Paragraph (a) also provides for a severance "in the discretion of the court." Paragraph (b) limits the right of a defendant to request a severance in such sex-related cases to those instances wherein evidence might be admissible against one defendant and inadmissible against another. State v. Lee, Mo., 404 S.W.2d 740, 745[1]. However, paragraph (b) also provides for a severance "in the discretion of the court." Clearly, the effect of the rule is to place a discretionary power in the court to order a severance in all cases, and to give a defendant the right to an automatic severance in all felony cases except those listed in paragraph (b) where his request is subject to a showing that the admissibility of evidence conflict exists. We do not believe there is merit in the argument that the trial court's discretion can only be exercised in misdemeanor cases.

Second, it is contended that prejudicial error was committed while the jury was being impaneled. This point has four subpoints and we will consider each separately.

■ [(A) By excluding persons having moral or religious scruples against the death penalty.] This sub-point is based on the holding in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776. From our review of the record, it is apparent that there were no such violations, but such a conclusion is now purely academic in view of the result we are compelled to reach herein. Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 decided June 29, 1972.

■ [(B) By asking about membership in civil rights organization.] The

prosecutor asked if any veniremen was a member of any one of five named organizations "or any other civil rights group." After objection by defendant, the court admonished the prospective jurors that "the previous question of the prosecutor had no specific reference to this defendant." There were no responses to the question asked. The state suggests there might be questions of "good taste" involved since the publicized objectives of the different organizations are so varied, but that "it is inconceivable that the bare asking of the question could have resulted in prejudice to the defendant . . .." We must agree. Somewhat in point are State v. McGee, 336 Mo. 1082, 83 S.W.2d 98; State v. Hoelscher, 217 Mo.App. 156, 273 S.W. 1098; State v. Miller, Mo., 207 S.W. 797, and State v. Mann, 83 Mo. 589, 595. As said in Miller, supra, 207 S.W. 797, at l.c. 798: " . . . It is the rule in this state that a liberal latitude is allowed in the examination of the jurors on their voir dire. * * * [2] The purpose of the examination by defendant of the panel on their voir dire is to develop, not only facts which might form the basis of a challenge for cause, but also such facts as might be useful to him in intelligently determining his peremptory challenges." In view of the fact the state also has peremptory challenges to exercise, there can be no tenable argument made that it should be prohibited from making such inquiries as would allow it to exercise the same intelligently. The only legitimate limitation would be at that point where such inquiry tended to create a prejudice against defendant. We can not find any basis for holding such a result occurred in this instance.

■ [(C) Negroes were systematically prevented from serving as jurors . . ..] From the record presented, we are unable to consider this sub-point. Defendant's first complaint was registered after several witnesses had testified, and an offer of the court to make a record as to the method by which prospective jurors had been selected was not accepted or pursued in any manner. Brown v. State, Mo., 470 S.W.2d 543; State v. Strawther, Mo., 476 S.W.2d 576.

■ [(D) Limiting the number of peremptory challenges to 12.] Under this sub-point, defendant concedes that he and the state were given the proper number of challenges as provided in Section 546.180, V.A.M.S. The relevant portion of said section, pertaining to peremptory challenges, reads: "(1) If the offense charged is punishable by death or by imprisonment in the penitentiary for life, the state shall have the right to challenge six and the defendant twelve, . . ." The section in a later paragraph allows for a larger number of peremptory challenges ". . . in all cities which now have or may hereafter have a population of over one hundred thousand inhabitants . . ." After noting that this trial was in Clayton, a city of approximately 16,000, defendant submits that the urbanization and growth of St. Louis County calls for a similar number of peremptory challenges in this case. The argument as made may be of legislative interest, but it does not establish any unconstitutional discrimination against defendant. A comparable argument in connection with the same subject matter was considered and denied in the early case of Hayes v. Missouri (1887), 120 U.S. 68, 71, 7 S.Ct. 350, 30 L.Ed. 578. We recently referred to that case with approval in Morton v. State, Mo., 468 S.W.2d 638, wherein it was said, l.c. 640: "The rule applied in that case is sound and is still the law. Statutory classification, if based upon some reasonable ground or on some difference which bears a just relation to the attempted classification, does not constitute unconstitutional discrimination, provided those in the same class are treated with equality. State v. Terrell, Mo.Sup., 303 S.W.2d 26; Walters v. City of St. Louis, 364 Mo. 56, 259 S.W.2d 377, aff. 347 U.S. 231, 74 S.Ct. 505, 98 L.Ed. 660." We can not say as a matter of law that the legislative classification provided by Section 546.180, V.A.M.S., has at this time be-

come arbitrary and unreasonable. See State v. Lee, supra, 404 S.W.2d at 745.

 Third, it is argued that the trial court erred in permitting the state to introduce statements attributed to the defendant. Three different episodes are involved, and the trial court, after holding an appropriate hearing, State v. Fair, Mo., 467 S.W.2d 938, 942, found each to be admissible in evidence. The first of such statements was supposedly made by defendant when he was on a stretcher in the hospital awaiting surgery for a severe gunshot wound of the chest. The same was related from the witness stand by the security officer of the hospital. A portion of the record reflects: "Q. . . . At the time that he was being attended by the doctor what, if anything, happened? A. . . . . he was on a stretcher and the doctor said that he was in pretty bad shape, if he had anything to say it would be a good idea to talk to the officer. Q. What happened then? A. Then he started to tell me about shooting Officer Downey." Defendant submits that such testimony should have been suppressed for the reason defendant had not been given Miranda warnings. Initially, we again comment that this court has looked rather critically at efforts to establish statements as purely "voluntary" when there is any semblance of a custodial interrogation. State v. Devoe, Mo., 430 S.W.2d 164; State v. Evans, Mo., 439 S.W.2d 170; State v. McGee, Mo., 447 S.W.2d 270; and, State v. Fair, supra. In this case the witness was a security officer of the hospital, and his presence there was not because defendant appeared on the scene in a critical condition. It is not suggested that the officer interrogated defendant at all prior to the questioned statement, nor, is there anything in the record to indicate he even knew the doctor would make such a suggestion to defendant. From the record presented, we can not declare that the trial court erred in finding the same to have been purely voluntary. In addition, we have concluded beyond a reasonable doubt that the admis-

sion of such testimony could not have been prejudicial to defendant. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed.2d 705. Later, on two different occasions and after defendant had been fully advised of his constitutional rights, he admitted his participation in the offense; and, there is nothing in the record which indicates such statements were tainted in any sense by the first statement noted. Furthermore, if it could be concluded that the first statement was not, in fact, voluntary in a legal sense, there could have been no prejudice to defendant in view of the many witnesses to the affray and his having suffered injuries in the station shooting and being found at the scene. We know of no constitutional prohibition against a seriously wounded person confessing to the commission of a crime.

 Fourth, defendant complains that the trial court erred by instructing the jury on the felony-murder doctrine and accepting a finding of guilt based on the same, when he had been indicted for first degree murder in the conventional form. We recently considered and rejected the same argument in State v. Stancliff, Mo., 467 S.W.2d 26. It is well established in this state that a person may be prosecuted by information or indictment for willful, deliberate and premeditated murder as defined in Section 559.010, V.A.M.S., and that the requirements of proof may be satisfied by proof of murder committed during the course of a felony. State v. Smith, Mo., 310 S.W.2d 845, 848; State v. Sykes, Mo., 436 S.W.2d 32; and State v. Copeland, 335 Mo. 140, 71 S.W.2d 746, 752.

 Fifth, defendant submits that he was denied a fair trial for four reasons listed under this point. (A) Certain guns and other items were offered in evidence, and objection was made that no "chain of control" of such exhibits was shown. We need not repeat the details in this connection, for the reason such exhibits were specifically identified as those actually involved in the crime. Chain of control, as

such, is only a relevant issue where the exhibit itself is not susceptible to positive identification in a singular sense. (B) Defendant contends that the court admitted hearsay evidence, when it allowed a witness to relate the answers of defendant to questions propounded by one other than the witness. There is no merit in this argument. (C) Near the close of the case, defendant's request to call the prosecuting attorney as his witness was denied. Prior to such ruling, the court inquired as to the purpose, and defendant's counsel stated he wanted to inquire if the prosecutor's office " . . . took any statements . . . ." We need not comment on the state's suggestion that such was not a good-faith effort to elicit favorable testimony. There is no evidence in the record suggesting that any statements had ever been given to the prosecutor, nor did the state attempt to offer any. Furthermore, defendant failed to evidence a good-faith purpose, and made no offer of proof tending to show he was in any manner or degree prejudiced by the court's ruling. (D) Two complaints are made reference closing argument of the prosecutor. First, the defendant in closing argument kept challenging the state's good faith for not calling an officer who had questioned defendant. In response, the state replied that this particular officer had been shot (when, in fact, he had been killed). If such a comment could be considered improper, it was indeed an invited error of which defendant is in no position to complain. Second, it is argued that the state in the opening portion of its closing argument did not request the death penalty but did in the latter portion thereof. Compare State v. Fair, Mo., 467 S.W.2d 938, 940[1], which is clearly distinguishable. The jury had been qualified under the "death penalty" procedure approved by this court, State v. Pollard, Mo., 447 S.W.2d 249, and defendant in his closing argument elected to join issue as to the death penalty being an appropriate punishment in this case. Such argument by defendant included comments like "hang a man," "take his life," "before you decide to send this man to his death," "got to die for it," and "got to go to his death." The defendant in Fair, supra, in contrast to this case, did not invite a response by the state in its rebuttal argument. In any event, the matter is now academic in view of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, decided June 29, 1972, which prohibits imposition of the death penalty in this case.

Lastly, defendant's contention that the evidence was insufficient to support the verdict is totally without merit.

■ By reason of the holding in Furman, supra, the sole and only punishment for first degree murder in this state is life imprisonment. Section 559.030, V.A.M.S. The punishment assessed in this case being unauthorized, we, necessarily, reduce the same to one of imprisonment for life and do so by virtue of Section 547.280, V.A.M. S. and Supreme Court Rule 28.15. State v. Starkey, Mo., 26 S.W.2d 956; State v. Harris, 337 Mo. 1052, 87 S.W.2d 1026; State v. Melton, Mo., 92 S.W.2d 107; State v. Satterfield, Mo., 336 S.W.2d 509; and, State v. Rentschler, Mo., 444 S.W.2d 453.

It is further ordered that the clerk of this court forthwith furnish the warden of the state penitentiary and the state Department of Corrections a certified copy of this order and judgment.

As so modified, the judgment is affirmed.

All concur.