STATE of Missouri, Respondent,

v.

Charles Lee TURNBOUGH, Appellant.

No. 56610.

Supreme Court of Missouri, Division No. 2.

Sept. 10, 1973.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Karl F. Lang, St. Louis, for appellant.

HENLEY, Presiding Judge.

This is an appeal [1] by Charles Lee Turnbough, defendant, from a judgment sentencing him to imprisonment for a term of five years upon his conviction by a jury of the offense of assault with intent to do great bodily harm without malice aforethought. Section 559.190.[2] We affirm.

Defendant does not question the sufficiency of the evidence to sustain the conviction. A brief summary of the facts will suffice. On June 13, 1969, and prior thereto, the Charles Drake family, consisting of Mr. Drake, his wife, Bernese, and their high-school-aged son, Michael, lived in a second-floor apartment in a multi-family apartment building at 4125 North Florissant in the city of St. Louis. Mrs. Peggy Crews lived in an apartment directly across the hall from them. Defendant was a regular visitor to Mrs. Crews' apartment and had been for the several months since her former boy-friend moved out.

Mr. Drake was employed by Terminal Railroad Company. He left home about 10:30 the night of June 12 to go to work. After his departure, Mrs. Drake locked the apartment door, using, in addition to the regular lock, a safety chain, one end of which was attached to the door facing and the other to the door.

During the night, Mrs. Drake was awakened several times by loud voices, both male and female, and loud music coming

1. The notice of appeal was filed before January 1, 1972; hence, the case was retained in this court for final disposition in accordance with the requirements of the schedule (§ 31, para. 4) to the 1970 amendment of Mo. Const. Art. V, V.A.M.S.

2. References to sections of the statutes are to RSMo 1969 and V.A.M.S.

from the Peggy Crews apartment, where apparently a boisterous party was in progress. Finally, on being awakened by this noise shortly after 3 a. m. on the 13th, she reported the party to the police. The noise subsided after police officers arrived at the Crews apartment, but within a few minutes after the officers left, Mrs. Drake heard defendant in the hallway exclaim in a loud voice that he intended to find who had called the police and "take care of them."

After inquiring at two other apartments, defendant and Mrs. Crews appeared at the door of the Drake apartment and demanded to know whether she had called the police. When told that she had not, defendant, by sheer force, broke open the door and entered the Drake apartment with Mrs. Crews following close behind him. In breaking open the door, a piece (approximately 3 feet long, 2 inches wide, and 1 inch thick) of the facing to which the safety chain had been attached, was broken and torn loose from the wall.

As defendant advanced toward Mrs. Drake with his fists clenched she said, "Please don't hit me * * * I am a heart patient." To this he replied immediately before he struck her, "You better lay down on the floor over there, lady, because you are getting ready to die." His blow knocked her to the floor across the room. Michael rushed to his mother's aid, but one blow from defendant put an end to any threat he may have been to the intentions of defendant and Mrs. Crews. With Mrs. Drake prostrate on the floor, defendant stood over her kicking her on her back and other parts of her body while Mrs. Crews beat her upon and about her face and head with the above-described piece of door facing.

Having finished their task and as they were leaving, defendant told Mrs. Drake she was lucky they let her live and asked her to thank him for her life. She thanked him. As a result of this beating, Mrs. Drake was hospitalized for two weeks.

Dr. Henry Westerman, her attending physician, testified that when he went to her hospital bed he found Mrs. Drake trembling, crying, and unable to speak with a controlled voice; that her face and head were swollen and covered with contusions and abrasions; that she was unable to close her mouth because the occlusion of her teeth had been affected; that she had numerous contusions over her whole body, including, specifically, her breasts, her chest, her back, hips, and abdomen; and that she was suffering a great deal of pain in her left hand and wrist. At the time of trial, a year and a half after the assault, she still was without full use of her left hand and could not have proper occlusion of her teeth.

Defendant's first point is that the court erred in permitting counsel for the state to exact from the veniremen during voir dire a commitment that they would convict if the state proved defendant's guilt beyond a reasonable doubt. It is implicit in defendant's argument that he contends the whole panel was thus disqualified.

Defendant asserts that by the following three questions propounded to the veniremen, the state sought and secured a commitment or pledge that they would convict:

1. "Now, after presenting all the evidence to you and all the witnesses testified from this witness stand if this evidence proves to you beyond a reasonable doubt that this man Charles Lee Turnbough is guilty of the crime of assault with intent to do great bodily harm with malice, is there anyone here who would not convict him?"

2. "The question I am asking you is simply this. If after you are selected to be on a final jury and after you hear all the evidence coming from this witness stand and if the State proves to you beyond a reasonable doubt in your own mind beyond a reasonable doubt that this man is guilty of the charge, is there anyone here who for any personal reason, maybe religious

conviction, feels that you couldn't come back with a verdict of guilty?"

3. "Is there anyone here who couldn't come back with a verdict of guilty under those circumstances?"

Immediately upon the first question being asked, the defendant, outside the hearing of the panel, objected to the question on the ground that it sought a commitment from these veniremen that if they were chosen to sit on the trial jury, they would vote to convict. When this objection was overruled, counsel for the state immediately turned to the jury and asked the second and third questions. The "same objection" to each brought the "same ruling."

We do not reach or rule the question of whether the state improperly sought and secured a pledge from members of the panel that each would vote to convict, because we have the view this issue was not preserved for review and, furthermore, that defendant waived any objection he may have had to allegedly improper voir dire by expressly accepting the panel as satisfactory. We do observe, however, that questions of this type (particularly the first question) can and should be avoided, because they border upon, if they do not in fact exact, a pledge to convict. See and compare State v. Gray, 423 S.W.2d 776, 781 [6] (Mo.1968) and cases there cited, and State v. Kiner, 441 S.W.2d 720, 722–723 [3] (Mo.1969). However, the state and the defendant are entitled to know at this stage of the proceedings whether there is any *reason* why (and, if so, the reason) a venireman could not or would not follow the evidence and the law.

The objections of defendant to the three questions propounded to the panel during voir dire were not, standing alone, sufficient to inform the court that defendant's position then or at the close of the process of impaneling the jury was that this panel was disqualified. The proper method of informing the court of defend-

ant's position is by motion to discharge the panel or array, assigning reasons why it is disqualified. Orderly procedure requires that such motion be filed before counsel are required to make their peremptory challenges, because, if sustained, the process of making these challenges is eliminated as to this list of veniremen. Defendant's presentation of this issue for the first time in his motion for new trial comes too late and did not preserve it for review. State v. McGee, 336 Mo. 1082, 83 S.W.2d 98, 105–106 [15–16] (1935) and cases there cited; State v. Garrett, 285 Mo. 279, 226 S.W. 4, 6–7 [4, 6] (1920); cf. State v. Parker, 378 S.W.2d 274, 278 [2] (Mo.App. 1964).

At the close of voir dire examination and before the parties had made their peremptory challenges, the court asked counsel this question: "Gentlemen, is this panel satisfactory?" Counsel for defendant replied: "Satisfactory to the defendant, Your Honor." Counsel for the state replied: "Yes." By expressly accepting the panel as satisfactory at this point, defendant waived his objection to the result he says was caused by improper voir dire questions. Strawn v. Coca-Cola Bottling Company, 234 S.W.2d 223, 226–227 [5] (Mo.App.1950); 50 C.J.S. Juries § 254, p. 1016 and cases cited at n. 65; People v. Rose, 268 Mich. 529, 256 N.W. 536, 537 [2] (1934); People v. Miron, 31 Mich.App. 142, 187 N.W.2d 497 (1971).

Not only did defendant thus waive his objection at this point, he reaffirmed that waiver later, after peremptory challenges had been made. When the jury list was returned to the court and immediately before the jury was sworn to try the issues, the court inquired: "Gentlemen, is this your jury?" Counsel for the state replied: "It is that, Your Honor." Counsel for defendant replied: "This is my jury panel, Your Honor."

Defendant's next point is that the court erred in giving instructions numbered 3 and 4, because there was not sufficient evi-

dence to support the giving of either instruction.

Instruction No. 3, the verdict director on assault with intent to do great bodily harm with malice aforethought, informed the jury (1) that defendant and Peggy Crews had been charged jointly with this offense, but that a severance had been granted and defendant alone was on trial before them; and (2) that "if [the jury] find and believe from the evidence beyond a reasonable doubt the defendant * * * did * * * strike, beat, kick and wound Bernese Drake * * * upon her head and body with his fists and feet * * * then you will find * * * [him] guilty * * *." Instruction No. 4 was substantially the same as instruction 3, except that it was the verdict director on the lesser offense of assault without malice, the offense of which the jury found defendant guilty.

Defendant asserts that the evidence does not support the giving of these instructions for the reason there is no substantial evidence (1) that he struck Mrs. Drake about the head with either his fists or his feet, or (2) that he kicked Mrs. Drake "five or six times."

■ Mrs. Drake testified that defendant kicked her "five or six times." Police Officer Donald Huonker testified, on cross-examination by defendant, that Mrs. Drake stated to him at her apartment during his investigation shortly after the assault, that defendant "struck her once in the face." Contrary to defendant's contention, this is substantial evidence of the particular facts defendant claims were missing. The evidence was sufficient to support the giving of both instructions. The cases cited by defendant [State v. Rongey, 231 S.W. 609 (Mo.1921); State v. Bartlett, 359 Mo. 881, 224 S.W.2d 100 (1949); and State v. Wright, 409 S.W.2d 797 (Mo.App.1966)] are distinguishable from this case on the facts. In those cases there was *no* evidence to support instructions given.

Defendant's last point is that the court erred in giving instruction No. 6. This instruction informed the jury that where two or more persons knowingly act together in committing an offense, the act of one in furtherance of the offense is the act of each. Defendant asserts that neither this instruction nor instructions 3 or 4, the verdict directors, hypothesized facts authorizing a finding by the jury that the acts of Peggy Crews were also his acts, and that for this reason the giving of instruction 6 was prejudicial error.

■ The statement of facts demonstrates that there was substantial evidence to support a finding that defendant and Peggy Crews knowingly acted jointly with a common intent to break into the Drake apartment and brutally assault Bernese Drake, and that they accomplished their intent. Instruction 6 correctly told the jury, under these circumstances, that the act of one was the act of each. It was not required that the verdict directors refer to joint action; nor was it required that they or instruction 6 hypothesize a specific finding that defendant acted jointly with another with a common intent. The court did not err in giving instruction 6. State v. McCollum, 377 S.W.2d 379, 387–388 [15] (Mo.1964).

The judgment is affirmed.

DONNELLY, C. J., and FINCH, J., concur.

MORGAN, J., not sitting.