STATE of Missouri, Respondent,

v.

Marcella BROWN, Appellant.

No. 59348.

Supreme Court of Missouri,
en banc.

March 14, 1977.

798

James C. Jones, Asst. Public Defender, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Robert H. House, Asst. Atty. Gen., Jefferson City, for respondent.

BARDGETT, Judge.

Defendant-appellant Marcella Brown appealed to the court of appeals, St. Louis district, from her conviction of murder in the second degree and twenty-five year sentence. A three-judge panel of the court of appeals, by opinion, reversed and remanded the case for error in refusing to permit defense counsel to interrogate the jury panel on voir dire with reference to self-de-

fense and held that defendant did not waive her objection by "accepting the jury" in the manner that appears infra, one judge dissenting. Thereafter, and on application of respondent, this court transferred the appeal pursuant to Art. V, sec. 10, Mo.Const., as amended 1970, because the opinion of the court of appeals appeared to conflict with *State v. Turnbough*, 498 S.W.2d 567 (Mo. 1973). Much of the following opinion is taken from the court of appeals opinion of Clemens, J.

Defendant and victim Hugh Massey had occupied adjoining third-floor apartments in a converted residence in St. Louis. They shared a bathroom and defendant had complained to the apartment manager about Massey drunkenly soiling the bathroom. The manager ordered Massey to move out and locked his apartment; he told defendant not to let Massey back in. Defendant admitted to police: That night she heard someone breaking into a second-floor bathroom through an outer window; she got her shotgun and went down the hall to the bathroom; as Massey suddenly and drunkenly emerged from the bathroom she shot and killed him.

During the voir dire examination of the venire, defense counsel wanted to question the prospective jurors with regard to self-defense and accident. The court sustained the state's objection and refused to permit the interrogation. Appellant's complaint is based upon the following colloquy which took place at the bench.

"MR. ADAMS (Defense Counsel): . . . I intend to ask the jury—to indicate to the jury that I anticipate that the Court may instruct the jury on the question of self-defense . . . Now with that in mind, I would ask the jury whether they could follow the law with respect to the burden of proof on [self-defense].

"MR. FRIEDMAN: (Assistant Circuit Attorney) Again, Your Honor, this is beyond the scope of voir dire examination. I object to any question—the question is can you follow the law and that's the general one I asked. Everyone said he could follow the questions and the law.

"THE COURT: Sustained as to the last question [self-defense].

"MR. ADAMS: . . . It is on the State to prove beyond a reasonable doubt that . . . with respect to the question of self-defense, and the burden of proof is on the State to prove beyond a reasonable doubt that it was not self-defense. I don't want to go into the details of the case, but I think I have a right to ask the jury as to whether they would require the defense to prove self-defense . . . .

"MR. FRIEDMAN: . . . I think any speculation at this point, when no evidence is before the jury as to self-defense . . . I think is purely speculative and I think it is improper to go into at this point of the trial.

"THE COURT: Sustained." [1]

■ The constitutional right to a trial by jury would be a mockery of justice if it did not guarantee a jury with open minds, freely able to follow the law as declared by the trial court. *Faught v. St. Louis-San Francisco Ry. Co.*, 325 S.W.2d 776[1] (Mo. 1959). Deeply ingrained in Missouri law lies the principle that "a liberal latitude is allowed in the examination of jurors on their voir dire . . . The purpose of the examination by defendant of the panel on their voir dire is to develop, not only facts which might form the basis of a challenge for cause, but also such facts as might be useful to him in intelligently determining his peremptory challenges." *State v. Granberry*, 484 S.W.2d 295[4, 5] (Mo. banc 1972), citing a series of cases going back to the oft-cited case of *State v. Mann*, 83 Mo. 589 (1884). Specifically, a defendant has the right to discover whether prospective jurors have fixed opinions against applying the court-declared law of self-defense. Compare *State v. Lassieur*, 242 S.W. 900[2] (Mo.1922); *State v. Dill*, 282 S.W.2d 456[7–9] (Mo.1955).

■ That was the issue here. At the voir dire stage the defendant intended to and by the court's later instruction did submit the issue of self-defense. The jurors would be required to apply the principle that the burden of proof on this issue would not be on the defendant to establish it but upon the state to negate it. (MAI–CR 2.40) This is an apparent departure from the principle that the party asserting an "affirmative defense" has the burden of proving it. An average juror might well have a mental attitude against the converse principle in effect here. So, the defendant had good reason to determine if any venireman had a fixed opinion against the principle of requiring the state to disprove self-defense. If so, defendant would have a good ground for challenging for cause, or at least peremptorily striking, such a venireman.

■ "Since bias often lies deep within the minds of prospective jurors, counsel should be allowed a wide latitude to expose that bias." *Littell v. Bi-State Transit Development Agency*, 423 S.W.2d 34[3] (Mo. App.1967). The principle was applied in the factually different case of *State v. Hoelscher*, 217 Mo.App. 156, 273 S.W. 1098[1] (1925), discussing a defendant's rights on voir dire to explore the minds of jurors to disclose mental factors which would impede a fair trial on the law and facts of the case before them. In *Hoelscher* defense counsel sought to learn if the veniremen belonged to any organization, particularly the Ku Klux Klan, having for its purpose the prosecution of criminal cases. The trial court refused to allow the inquiry. In reversing, the supreme court followed *State v. Mann, supra,* which held a defendant ". . . is entitled to an impartial jury, and may make such inquiries as will enable him to secure that constitutional right. Must he exercise his right of peremptory challenge, without the privilege of making inquiries, except such as relate to the competency of the panel? . . . If such is the law, the right of peremptory challenge may prove a snare and, at best, is of no earthly value to the accused." And, the *Hoelscher* court

---

1. We have omitted the now irrelevant statements concerning the possible defense of accident.

added: ". . . But the questions asked in this case, and the information sought to be obtained, was proper if the right to trial by a fair and impartial jury is to remain inviolate. The information sought was within reasonable limits, and the trial court erred in refusing to permit counsel to examine the panel with respect to their affiliations with, or membership in, the Ku Klux Klan." The proposed inquiry here was different, but just as reasonable an effort to select a fair-minded jury.

■ We realize a litigant's method of challenging a trial court's ruling on permissible voir dire questions should be specific. In *Littell, supra,* we followed *State v. Mosier,* 102 S.W.2d 620[7] (Mo.1937): "The correct procedure is for counsel to ask the members of the panel whether, if the court later instructs them in a specified manner, they have any opinion or conscientious scruples such as would prevent them from returning a verdict accordingly." At 423 S.W.2d 38, we added: "The question would have been better if it had simply asked the panel whether any of them had a *fixed opinion* against the proposition that in a case of this kind . . ." [the burden would be on the state to show defendant did not act in self-defense].

In the instant case we cannot condemn defense counsel for not asking such a precise question because he was not permitted to ask his question. But we hold "the wide latitude allowed litigants to discover bias demanded that the defendant, in the interest of securing a fair and impartial jury, be allowed to make proper inquiry on the subject." *Littell, supra,* [7]. By defendant's "proffer" her counsel told the trial court he proposed to ask the veniremen if they *could* follow the principle of the state having the burden of disproving self-defense. To this, the state objected that this had been covered by the state's previous general question about whether the veniremen can "follow the law". The state's general question did not cover defendant's proposed inquiry about the critical issue of the state's burden to disprove self-defense.

We do not have before us a specific voir dire question. But it is clear defense counsel made known to the *trial court* he wanted to learn if the veniremen's minds were open or closed to the principle that the burden of proof would be on the state to disprove self-defense. This was vital to the defendant's right to have an unbiased jury. The trial court erred in barring defendant from exercising this right.

■ After the colloquy set forth supra, the proceedings were resumed within the hearing of the jury panel, the voir dire examination completed, and the jury selected seated. Just before the jury was sworn, the record reflects the following colloquy took place which is the basis for the respondent's contention that the defendant waived her right to examine the panel reference self-defense by "accepting" the jury.

"THE COURT: Is that the accepted panel, gentlemen?

"MR. FRIEDMAN: It is, Your Honor.

"MR. ADAMS: Yes, Your Honor.

"At this time the jury panel was sworn."

The respondent contends that this constituted a waiver of any objections to the selection of the jury and that the court of appeals decision is in conflict with *State v. Turnbough,* 498 S.W.2d 567 (Mo.1973). In *Turnbough* the defendant objected to certain questions asked by the prosecutor on voir dire which the defendant claimed were intended to commit the jury to a guilty verdict. The trial court, however, overruled the objections and allowed the prosecutor to ask the questions. At the end of the voir dire, but before the jury was selected from the panel, the judge asked the lawyers: "Gentlemen is this panel satisfactory?" The defense replied, "Satisfactory to the defendant, Your Honor", and the state merely answered, "Yes". This was held to come within the rule regarding the waiver of objections to the jury selection process as that rule is stated in 50 C.J.S. Juries § 254 p. 1016, which reads in part as follows:

"If a party expressly accepts as satisfactory the jury as finally impaneled, he waives the right to present any challenge

for cause thereafter. He also waives any prior objection to the action of the court . . . in permitting improper questions to be put to jurors, [or] in excluding proper questions . . . ."

The court in *Turnbough* placed particular emphasis on the fact that counsel for the defendant expressly accepted the jury *panel* as "satisfactory".

Although the record does not contain a verbatim account of what took place after the voir dire questions were concluded, we know that thereafter the prosecuting attorney made his peremptory strikes and told defense counsel the names of the panel so stricken; that defense counsel then made his strikes; that the court, the clerk, or the bailiff, then called out the names of the excused jurors and those persons left the jury box, and that the twelve-member jury was then seated in the appropriate chairs in the jury box. In Missouri, unlike some states, no peremptory strikes are made during the voir dire. All are made only after the voir dire examination has concluded. We say we know this happened because, having either tried or presided over the trial of cases in circuit court in this state, we know the only way to end up with the correct twelve jurors seated in their correct chairs in a jury box, this or some procedure practically identical to it is utilized in every jury-tried case. On occasion a mistake is made in seating the twelve jurors. The attorneys have the list of the veniremen in their hands and the court in order to learn if a mistake has been made and then correct it will sometimes address a question to the attorneys. That question may take the form utilized here and set forth supra, or it may be a question such as, "Are these the twelve you have selected?" or some other form. Whatever form it takes, its purpose is the same—to promptly expose any mistake made in seating the panel so as to get the correct twelve in the jury box and proceed with the trial.

In the instant case the defendant's attorney did not expressly accept the panel as "satisfactory" as the decision in *Turnbough* states was the case there. Underlying the court's question here is the knowledge that the attorneys made their peremptory challenges and the inquiry was simply to confirm that the twelve persons seated as jurors were the same twelve who remained after those strikes were made according to the jury lists each attorney used during the course of the voir dire examination.

In other words, the court used the phrase "the accepted panel" only to describe that unit of twelve who were finally seated as jurors as a result of elimination of those persons who were stricken by peremptory challenges.

In the instant case there was no question addressed to the attorneys after voir dire and before the peremptory challenges were made as to whether the *panel* was satisfactory as there was in *Turnbough*. Whether the *Turnbough* conviction would have been affirmed had defense counsel not expressly told the court that the *panel* from which he would thereafter make his peremptory strikes was "satisfactory to the defendant" is at least doubtful. It is clear from the *Turnbough* decision, however, that the court relied principally upon the affirmative acceptance of the *panel* and not the lawyers' response to the question subsequently asked after the jury was finally selected as the basis of the waiver. That basis does not appear in the record of the instant case.

*Turnbough* cites three cases—*Strawn v. Coca-Cola Bottling Co. of Mo.*, 234 S.W.2d 223, 226–227 (Mo.App.1950), *People v. Rose*, 268 Mich.App. 529, 256 N.W. 536, 537 (1934), and *People v. Miron*, 31 Mich.App. 142, 187 N.W.2d 497 (1971)—as supporting the rule on waiver of objections to a jury panel contained in 50 C.J.S. Juries § 254, quoted supra. We are not convinced they support the broad rule respondent claims *Turnbough* supports.

In *Strawn* the defendant claimed the trial court committed error when it permitted the plaintiff's attorney to examine the jury panel with reference to their connection with an insurance company. Counsel for defendant made no objection to the question at the time it was made nor did he ask that the panel be discharged. After the examination, defendant's counsel said,

"[t]he panel is acceptable to us." 234 S.W.2d at 227. It was under these circumstances, i. e., defendant's failure to make any objection and the failure to move to quash the panel, as well as defendant's acceptance of the *panel*, which caused the court to find that nothing was preserved for review.

This is further illustrated by the two statutes cited by the court in *Strawn* to support its decision. Sec. 847.122, Mo.R.S.A.1939, provided that it was no longer necessary to make formal exceptions to the court's rulings and it would be sufficient at the time of the ruling if the party made its objections known to the court. Similarly, sec. 847.140(a), Mo.R.S.A.1939, provided that no allegations of error, except for subject-matter jurisdiction and the sufficiency of the pleadings, would be considered in any civil case unless they had been "presented to or expressly decided by the trial court." Unlike *Strawn*, both *Turnbough* and the instant case involved situations where the attorneys raised objections to the line of questioning or the refusal to allow certain questions. However, in *Turnbough* there was an express acceptance of the *panel* (venire) from which the jury of twelve was selected whereas in the instant case there was no such acceptance voiced. *Strawn* cites *Gildehaus v. Jones*, 356 Mo. 8, 200 S.W.2d 523 (1947), *Bulkley v. Thompson*, 240 Mo.App. 588, 211 S.W.2d 83 (1948), and *Power v. Frischer*, 229 Mo.App. 1056, 87 S.W.2d 692 (1935), which involved situations where there was either *no objection* made at the time of the ruling or one was made which did not comply with the statute.

*People v. Rose, supra,* involved a situation where the trial court erroneously restricted the scope of questioning on voir dire. The Supreme Court of Michigan refused to consider this error first because the defendant had failed to exhaust his peremptory challenges of the panel and secondly because he accepted the jury panel. Most importantly the court found the defendant was not prejudiced by the restrictive scope of voir dire because he failed to exhaust his peremptory challenges and there was no showing he was not satisfied with the panel. In the instant case there is no issue of peremptory challenges and the defendant was obviously not satisfied as demonstrated by her objection to the court's restriction on her voir dire examination and the renewal of that point in her motion for new trial.

In *People v. Miron, supra,* the defendant complained of the en masse questioning of the prospective jurors and the less than full questioning of replacement jurors. The court found this claimed error lacked substantive merit in light of the record plus the defendant waived the alleged error because of his express indication of satisfaction with the panel. The *Miron* decision does not reveal that defendant's attorney objected to the procedure at the time it occurred. Although *Miron* states the rule that objections to the jury panel are waived when the panel is expressly accepted, we have found some earlier cases of the Supreme Court of Michigan which we think qualify the decision in *Miron* and set forth a more acceptable rule. In *Fedorinchik v. Stewart*, 289 Mich. 436, 286 N.W. 673 (1939), the plaintiff's attorney wanted to ask the prospective jurors whether they had insurance with the defendant's insurer. The trial court, however, refused to give its permission to allow the question. The examination of the panel proceeded and subsequently plaintiff's counsel announced he was satisfied with the jury. The Supreme Court of Michigan held the trial court erred in restricting the scope of voir dire and, with reference to the plaintiff's express acceptance of the panel, the court stated at 675:

"This, however, should not be held to be a waiver of plaintiff's earlier insistence upon the right to have the jurors examined on voir dire in the manner hereinbefore noted. There is no intimation that counsel was not acting in entire good faith in asking for this further examination. He was eminently fair with the court. He made his position clear, took an exception to the adverse ruling, and acted ethically in accepting the trial court's decision. So far as could be ascertained from the restricted examination of the jurors they were acceptable. By so

announcing plaintiff did not waive his rights under the very definitive record he had made."

The court reversed and remanded the case for a new trial.

A similar line of reasoning was used in the more recent case of *Tisdale v. State,* 30 Md.App. 334, 353 A.2d 653 (1976), wherein the defense attorney's challenges for cause of two prospective jurors, one of whom answered he would give more weight to a police officer's testimony and the other who admitted being related to an assistant state's attorney, were overruled. The defendant was forced to use his peremptory challenges to strike these jurors. The appellate court held this was reversible error and then addressed itself to the question of whether the objection to the court's ruling had been waived. The court stated at 657:

". . . trial counsel for appellant stated in response to an inquiry by the clerk before the jury was sworn, 'The panel is acceptable to the defense.' The State also replied, 'Acceptable,' and the jury was then sworn. No waiver of appellant's challenges for cause occurred. His objections to the two jurors, for cause, had been clearly stated on the record and counsel's response—that the jury ultimately selected was 'acceptable'—was merely obedient to the court's rulings and obviously not a withdrawal of the request timely made, that the jurors be excused for cause."

We are of the opinion that the reasoning of the courts in *Tisdale* and *Fedorinchik* is applicable to the instant case because we think the defendant's attorney had no intention to waive his objections to the voir dire when he accepted the jury panel.

The court holds that the defense attorney's response to the court's question as to whether the jury of twelve was "the accepted panel" did not constitute an acceptance of the larger panel from which the twelve were selected as satisfactory and, therefore, does not constitute the kind of waiver found to be present in *Turnbough.*

The above holding disposes of the specific point briefed by the state with reference to

waiver. Additionally, however, the court of appeals distinguished *Turnbough* as follows: "Our case is the converse of *Turnbough.* There, it was the defendant who unsuccessfully objected to the State's voir dire questions and when the defendant's counsel accepted the panel he was aware of the harm done by the State's questions hypothetically committing the jury to a guilty verdict. The *Turnbough* court held defendant should have then moved to quash the panel. By contrast, here it was the State's counsel who objected to defense counsel's *proposed* questions. Defense counsel, not having been permitted to learn if the veniremen would require the State to bear the burden of negating self defense, unlike defense counsel in *Turnbough,* had no basis for moving to quash the panel."

One of the reasons we transferred this case was to examine the state's contention that the court of appeals opinion was contrary to *Turnbough* because *Turnbough* required the objecting party to move to quash the panel in order to preserve the error for review. While *Turnbough* was correctly decided by the court's interpretation of the facts in that case, we believe the breadth of the statement appearing therein, reference the requirement of a motion to quash the panel in order to preserve objections made during voir dire for appellate review, merits further examination. Therefore, the question the court must decide is whether Missouri law requires that a motion to quash the panel be made by a party in order to preserve for review specific objections which had been overruled or specific requests to ask certain questions which had been denied during voir dire examination. This assumes that the party has preserved the alleged error in his motion for new trial and on appeal.

The cases of *State v. McGee,* 336 Mo. 1082, 83 S.W.2d 98 (1935), *State v. Garrett,* 285 Mo. 279, 226 S.W. 4 (1920), and *State v. Parker,* 378 S.W.2d 274 (Mo.App.1964), are cited in *Turnbough* for the general proposition that in order to preserve the error for appellate review the party must move to quash the panel. Those cases, however, do

not directly concern the consequence of failing to move to quash a panel with respect to the preservation of objections made during voir dire examination.

Contrary to the impression that perhaps is conveyed by *Turnbough,* there is no rule that to preserve an objection made during voir dire examination with reference to questioning prospective jurors a party must move to quash the panel at the close of the voir dire. In *McGee* the appellant challenged for the first time on appeal the panel of jurors on account of their political affiliation. This court found this issue was not preserved because "[t]he record fails to disclose any timely challenge to the array [panel], verbal or in writing; or any objection (or exception) to the polls [individual jurors] involving this issue." 83 S.W.2d at 106. Although the case mentions challenges to the panel, it does not make such a motion mandatory to preserve objections specifically made during the course of the voir dire examination.

In *Garrett* the appellant on appeal objected to the method used to excuse twenty-two prospective jurors and to summon additional ones. This point was not preserved because appellant failed to make any objection on this ground during the voir dire and not because appellant failed to file a motion to quash.

*Parker* is cited in *Turnbough* as an analogous case. In *Parker* the appellant sought to quash the jury panel on the ground that the sheriff who summoned the panel was the prosecuting witness. According to the court this motion was properly overruled because, inter alia, it was not timely filed. The court, nevertheless, considered the point on its merits and concluded no wrongdoing occurred. The case is not analogous because the challenge in *Parker* was to the entire array and was based upon an alleged defect in the summoning process and not upon the refusal of the court to permit inquiry of the individual jurors reference their personal ability to act as jurors in the particular case.

In the following cases, objections or requests occurring during voir dire examination were reviewed on appeal *and no mention was made of whether or not the party seeking review made a motion to quash the panel* at the close of the voir dire examination. *State v. Spidle,* 413 S.W.2d 509 (Mo. 1967), was reversed and remanded for error in not sustaining a challenge for cause; *State v. DeClue,* 400 S.W.2d 50 (Mo.1966), was reversed and remanded for the same reason; *State v. Ford,* 495 S.W.2d 408 (Mo. banc 1973), was affirmed but the court entertained and decided the point relating to voir dire; *State v. Lovell,* 506 S.W.2d 441 (Mo. banc 1974), reversed and remanded for failure to sustain challenge for cause with three judges dissenting but not on grounds that a motion to quash was not made. See 18 Mo.Dig., Jury, ▮▮▮▮

Additionally, there are numerous cases collected in 18 Mo.Dig., Jury, ▮▮▮▮ "Extent of Examination" in which the appellate court entertained and decided issues relating to alleged error on the trial court's overruling of objections to questions asked on voir dire and refusing to permit certain questions on voir dire. We have read a substantial number but not all of these cases and nowhere does there appear any requirement that a motion to quash is necessary to preserve for review specific objections or requests recorded during the voir dire examination which have been preserved in the motion for new trial.

In *State v. Gardner,* 524 S.W.2d 38 (Mo. App.1975), the appellant contended the trial court erred in permitting the prosecutor to question the veniremen about their church affiliations. No objection was made at the time the questions were asked. The court overruled the point saying at 40, "The trial court must be given the opportunity by timely objection to pass upon the propriety of questions, and where the defendant foregoes objection, as occurred here, the trial court should not be convicted of error for allowing the questions." This holding is in accord with all of the appellate court decisions we have found where the alleged error is in the overruling of specific objections to voir dire questions or in the sustaining of objections to questions proposed by the ap-

pellant. But nowhere does it appear that the motion to quash is necessary as to this type of matter.

*State v. Hoelscher,* 217 Mo.App. 156, 273 S.W. 1098 (1925), followed *State v. Mann,* 83 Mo. 589 (1884), and *State v. Miller,* 207 S.W. 797 (Mo.1918), and in all three cases the conviction of the defendant was reversed and the cause remanded upon the grounds that the trial court erred in refusing to permit defense counsel to ask certain questions on voir dire. Again, no requirement of a motion to quash was indicated in any of the cases. The objection made at the time was sufficient to preserve the matter for inclusion in the motion for new trial and review on appeal.

The respondent cites no Missouri authority, other than *Turnbough,* for the broad proposition that a motion to quash or discharge the panel is necessary to preserve the prior objections or refused requests for inclusion in defendant's motion for new trial and review on appeal.

The court holds that it is not necessary to move to quash or discharge the panel in order to preserve for inclusion in a motion for new trial and review on appeal the specific objections made during voir dire to questions asked by the other party or to preserve for review the trial court's ruling refusing to permit proposed questions to be asked of the panel. To the extent that *Turnbough* is in conflict with this holding, it is overruled.

■ Furthermore, questions by a trial judge to attorneys which are for the purpose of learning whether the attorneys waive prior objections should be clearly stated in order that neither a trial court nor an appellate court need indulge in inferences or suppositions in order to so find.

■ Defendant alleges two other points which the court will rule on because the same may occur on retrial. Defendant contends the court erred in admitting into evidence state's exhibit 9 which is a photograph of the upper half of the deceased's body and shows the wound inflicted by the shotgun shell. The exhibit was admitted into evidence without objection. It was later passed to the jury and subsequently sent to the jury room on request. Defendant objected to the jury's viewing the exhibit on the ground that it was highly inflammatory and prejudicial and that the inflammatory aspects of the exhibit far outweighed its probative value. We have viewed the exhibit and in the context of this case the court holds there was no abuse of discretion. The point is overruled.

■ Defendant's other contention is that the court erred in giving instruction 4, the second-degree-murder instruction, on the ground that it did not require a specific jury finding of premeditation. Instruction 4 is MAI–CR 6.06 which was approved by a majority of this court in *State v. Jackson,* 496 S.W.2d 1 (Mo. banc 1973), as against this same contention. The point is overruled.

Because of the error in the trial court's refusal to permit defendant's counsel to question the jury panel on voir dire as to whether they could follow the law with respect to the question of the burden of proof on the issue of self-defense, the judgment is reversed and the cause is remanded for a new trial.

SEILER, C. J., MORGAN and FINCH, JJ., concur.

HENLEY, J., dissents in separate dissenting opinion filed.

DONNELLY, J., dissents and concurs in separate dissenting opinion of HENLEY, J.

RENDLEN, J., not participating because not a member of the court when cause was submitted.

HENLEY, Judge, dissenting.

I respectfully dissent. I do so because I do not believe it may be said from this record that the court abused its discretion in refusing to permit defense counsel to inquire of the prospective jurors whether they could follow the law with respect to the burden of proof on the two defenses of accident and self-defense.

Immediately after defense counsel began his voir dire examination of the panel, the trial judge called counsel to the bench for discussion, outside the hearing of the jury, of a question raised by a statement of defense counsel to which the State had objected. During this bench conference the following also occurred:

"MR. ADAMS [counsel for defendant]: As long as we are here on this question, I also anticipate asking the jury the question along these lines: That the Court is the expert on the law in this room, that I do not mean to instruct the jury on the law because the Judge will do that at the end of the case. I intend to ask the jury—to indicate to the jury that I anticipate that the Court may instruct the jury on the question of self-defense and that the Court may instruct the jury on the question of accident. Now with that in mind, I would ask the jury whether they could follow the law with respect to the burden of proof on those two questions.

MR. FRIEDMAN [counsel for State]: Again, Your Honor, this is beyond the scope of voir dire examination. I object to any question—the question is can you follow the law and that's the general one I asked. Everyone said he could follow the questions and the law.

THE COURT: Sustained as to the last question.

MR. ADAMS: Then the Court, I gather, would not allow me to inquire of the jury as to whether they could—whether they understand the burden of proof with respect to accident? It is on the State to prove beyond a reasonable doubt that it was not accident and second, with respect to the question of self-defense, and the burden of proof is on the State to prove beyond a reasonable doubt that it was not self-defense? I don't want to go into the details of the case, but I think I have a right to ask the jury as to whether they would require the defense to prove self-defense or require the defense to prove accident. That's my only purpose in—

MR. FRIEDMAN: I don't know—it is not mutually exclusive. I don't know if accident and self-defense are not mutual-ly exclusive defenses. I don't know what the defense is going to be, but I think the general question is whether or not the jury will follow the Court's instructions; the Court will instruct at the end of the case; that the State has the burden of proof beyond a reasonable doubt; proving all the offenses (sic) of the crime—of any crime they might find the defendant guilty of, and I think again the general questions are fine. I think any speculation at this point, when no evidence is before the jury as to self-defense or accident or what have you, I think is purely speculative and I think it is improper to go into at this point of the trial.

THE COURT: Sustained.

\* \* \* \* \* \*"

The rule is that the conduct and scope of the voir dire examination of prospective jurors is left largely to the trial court's sound discretion and will not be interfered with on appeal unless a clear and obvious abuse thereof appears. *State v. Hawkins,* 362 Mo. 152, 240 S.W.2d 688, 693–694[8] (1951); *State v. McKeever,* 339 Mo. 1066, 101 S.W.2d 22, 27[7] (1936). And, questions propounded by counsel pertaining to the plea of self-defense or accident should be complete, and carefully and correctly framed. *State v. Lassieur,* 242 S.W. 900, 902[2] (Mo. 1922).

It is not the prerogative of counsel on voir dire to explain the law or state what the instructions of the court will be. *State v. Smith,* 422 S.W.2d 50, 67–68[29, 31] (Mo. banc 1967); *State v. Bolle,* 201 S.W.2d 158, 159–160[2, 3] (Mo.1947). It is for the court to instruct the jury in writing upon all the law applicable to the case and it is the jury's duty to follow the law as the court gives it. An attempt by counsel, before the evidence is in, to inform the jury which instructions on the law the court will give, and especially to state orally what those instructions will say the law is, or to explain what it is if there is any indication a member of the panel does not understand the oral statement, is fraught with danger of injecting prejudice and must be tightly con-

trolled by the trial judge. It is not until all the evidence is in that the trial judge knows with certainty which instructions will be given and even then what he says the law is must be in writing.

Here, counsel did not frame and present a specific question or questions for the court to rule upon; all he did was inform the court in general terms of the broad area about which he sought to inquire and, if necessary in his opinion, to inform and explain. His questioning members of the panel whether they could follow the law on the burden of proof of a defense would not be unlike inquiring whether they have any personal feelings for or against the rule which requires the State to bear the burden of proof throughout the case (*State v. Smith,* supra) or whether they believe the law on this subject is good or bad (*State v. Mosier,* 102 S.W.2d 620, 624[9] (Mo.1937)). In *State v. Mosier,* supra, the court said: "Their opinions on the merits of the law were immaterial unless so unyielding as to preclude them from following the law under the court's instructions. That should have been the question asked."

Moreover, counsel was seeking in this case to inquire relative to inconsistent defenses (*State v. Peal,* 463 S.W.2d 840 (Mo. 1971) and cases therein cited) and, while instructions on both these defenses may be given in some circumstances, defense counsel did not at any time inform the court what the proof would be that would require the giving of instructions on both. If the evidence would not permit the giving of both instructions, it would have been improper to permit counsel to inquire as broadly as he sought, because as to at least one of these defenses his inquiry would have injected a false issue. The least counsel could have done at the time was inform the court what the evidence would be that, in his opinion, would require the giving of instructions on both defenses, thus permitting the court to make an informed ruling as to counsel's inquiry on each. Instead, counsel kept mum; thus, in effect, attempting to sandbag the court.

I would hold that the court did not abuse its discretion in its rulings on the voir dire examination sought by defendant.